RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0356P (6th Cir.)
File Name: 02a0356p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

FIRST BANK OF MARIETTA,
      _Plaintiff-Appellant/_
      _Cross-Appellee,_

v.

HARTFORD UNDERWRITERS
INSURANCE COMPANY,
      _Defendant-Appellee/_
      _Cross-Appellant._

Nos. 00-4541/4542

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 95-00466—Algenon L. Marbley, District Judge.

Argued: June 21, 2002

Decided and Filed: October 10, 2002

Before: CLAY and GILMAN, Circuit Judges; HAYNES,
District Judge.

_____

*The Honorable William J. Haynes, Jr., United States District Judge
for the Middle District of Tennessee, sitting by designation.

1

_____

**COUNSEL**

**ARGUED:** Mark S. Miller, Columbus, Ohio, for Appellant. William H. Woods, McNAMARA & McNAMARA, Columbus, Ohio, for Appellee. **ON BRIEF:** Mark S. Miller, Columbus, Ohio, for Appellant. William H. Woods, John J. Petro, McNAMARA & McNAMARA, Columbus, Ohio, for Appellee.

HAYNES, D. J., delivered the opinion of the court, in which CLAY, J., joined. GILMAN, J. (pp. 53-62), delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

HAYNES, District Judge. Plaintiff First Bank of Marietta ("First Bank") appeals the district court's award of attorney fees and sanctions under its inherent powers and the district court's denial of First Bank's motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Defendant Hartford Underwriters Insurance Company ("Hartford") asserts a cross appeal of the district court's ruling that attorney fees and expenses are not available under Rule 11 for Hartford's failure to comply with the Rule 11's safe harbor provisions, and that attorney fees can not be awarded under Section 2323.51 of the Ohio Revised Code. For the reasons set forth below, we **AFFIRM** the district court's judgment because ample evidence supports the district court's exercise of its inherent authority to award attorneys fees. Further, neither Rule 11 nor the cited Ohio statute could be applied to the conduct sanctioned by the district court.

First Bank commenced this action seeking recovery under a fidelity bond purchased from Hartford for loss caused by an officer of First Bank, Jerry Biehl. Count I set forth a claim for

where the misconduct is so egregious, inexcusable, and destructive that no lesser sanction than dismissal could be adequate." *Graham v. Schomaker*, No. 99-1564, 2000 WL 717093, at \*3 (7th Cir. May 31, 2000) (internal quotation marks omitted). But the majority fails to quote the prior sentence in *Graham*: "Importantly, the court should first consider the adequacy of a less severe sanction." *Graham*, 2000 WL 717093, at \*3. It is only in cases where the conduct in question is "egregious, inexcusable, and destructive" that the Seventh Circuit allows a district court to bypass the "up to the task" requirement set forth in *Chambers*. In fact, the Seventh Circuit *vacated and reversed* the grant of sanctions in *Graham* because it found that, unlike cases where litigants engaged in misconduct that was "criminal in character" or that caused the "very temple of justice [to be] defiled," the alleged misconduct in that case did not "rise to the level of egregiousness required for the court to avoid undertaking the lesser-sanctions analysis." *Id.* at \*4 (alteration in original) (internal quotation marks and citations omitted). Like *Graham*, the case before us is also devoid of such egregious conduct.

I therefore cannot accept the majority's elimination of the "up to the task" requirement as set forth by the Supreme Court in *Chambers*. Thus, even if First Bank's conduct in purportedly "us[ing] the court system to try to force a result that it could not obtain under the applicable law" were (mis)construed to constitute bad faith, I would still conclude that the district court erred in imposing sanctions on First Bank pursuant to the court's inherent powers.

### III. Conclusion

For all of the reasons set forth above, I respectfully dissent from those portions of the majority opinion that affirm the district court's decision to rely upon its inherent powers to justify the award of attorney fees to Hartford.

losses incurred by First Bank as a result of two fraudulent loans issued by Biehl. Count II set forth a claim for losses incurred by First Bank as a result of Biehl's increase in the line of credit for Mascrete, Inc., to $301,500 from $140,000, without proper authorization.

The fidelity bond provided that Hartford would indemnify First Bank for losses resulting directly from certain "dishonest and fraudulent acts" committed by bank employees. First Bank filed a proof of loss with Hartford providing particulars regarding the loans to fictitious individuals that Hartford agreed to pay, but First Bank did not provide particulars regarding the Mascrete loan. After reviewing the documentation, Hartford took the position that Biehl's act of increasing the line of credit on the Mascrete loans was not covered under the indemnification policy. First Bank filed suit, seeking indemnification on the fictitious loans and on the Mascrete line of credit. The district court granted summary judgment to Hartford on Count II, and this Court affirmed the district court's judgment on appeal. The district court then awarded Hartford sanctions of attorney fees under its inherent powers, and denied First Bank's motion for Fed. R. Civ. P. Rule 11 sanctions. From these orders, these appeals arise.

### I.  Factual Background

#### A.  First Bank's Financial Institution Bond

First Bank purchased a fidelity bond from Hartford, the terms of which are governed by the Bond Agreement that provides, in pertinent part, that Hartford would indemnify First Bank for:

(A) Loss resulting from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others.

*Such dishonest or fraudulent acts must be committed by the Employee with the manifest intent:*

(a) *to cause the insured to sustain loss*, and

(b) to obtain financial benefit for the Employee or another person or entity.

\*\*\*

As used throughout the Insuring Agreement, financial benefit does not include any employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions.

\*\*\*

EXCLUSIONS
Section 2.  This bond does not cover:

\*\*\*

(h) loss caused by an Employee, except when covered under Insuring Agreement (A) . . . .

Joint Appendix ("JA") at 18, 22 (emphasis added).

The Bond Agreement defines what constitutes "discovery" of loss and how First Bank should notify Hartford of loss.

DISCOVERY.
Section 3.  This bond applies to loss discovered by the Insured during the Bond Period.  Discovery occurs when the insured first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

NOTICE/PROOF – LEGAL PROCEEDINGS AGAINST UNDERWRITER

Besides being an unpublished case with no precedential value, *Mann* does not stand for the proposition relied upon by the majority.  Instead, the dispute in *Mann* centered on whether the district court had made a finding of bad faith, and this court explicitly reaffirmed the principle that "the inherent authority to sanction exists for situations where a party or attorney's conduct *is not covered* by one of the other sanctioning provisions." *Mann*, 1997 WL 280188, at \*5 (emphasis added).  The numerous Sixth Circuit cases listed by the majority in footnote 11 also fail to support the wholesale elimination of the "up to the task" requirement set forth by the Supreme Court in *Chambers*, as can be readily ascertained by the conduct mentioned in the parenthetical describing each case.

The next two cases relied upon by the majority to bypass the "up to the task" requirement are *Amsted Industries, Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374 (Fed. Cir. 1994), and *Gillette Foods, Inc. v. Bayernwald-Fruchteverwertung*, 977 F.2d 809 (3d Cir. 1992).  But neither case supports the majority's position.  In *Amsted*, the court *reversed* the district court's award of expert witness fees under its inherent powers.  The *Amsted* court recognized that "*Chambers* admonishes trial courts to first employ statutory and rules sanctions.  Thus, courts should only resort to further sanctions when misconduct remains unremedied by those initial tools." *Amsted*, 23 F.3d at 379.  The Federal Circuit therefore concluded that, because "the litigation misconduct falls within the remedies of" a statute, the district court abused its discretion in relying on its inherent powers. *Id.* Similarly, the *Gillette* court *reversed* a district court's imposition of sanctions under its inherent powers, because the district court's finding of bad faith was clearly erroneous. *Gillette*, 977 F.2d at 814-15.

The final case cited by the majority in support of its elimination of the "up to the task" requirement is an unpublished Seventh Circuit decision stating that "[c]ourts need not consider lesser sanctions, however, in situations

requirement that inherent powers should properly be invoked only when the civil rules are not "up to the task" of addressing the conduct at issue. After acknowledging that *Chambers* does not define what "up to the task" means, and that various federal courts of appeals have interpreted the phrase in different ways, the majority declares: "In our view, *Chambers* should be read broadly to permit the district court to resort to its inherent authority to sanction bad-faith conduct, even if the court has not expressly considered whether such conduct could be sanctioned under all potentially applicable rules or statutes." Maj. Op. at 23. I strongly disagree with the majority's adoption of this broad new rule.

As the majority points out in footnote 12 above, a number of our sister circuits have rejected its broad interpretation of *Chambers*. Maj. Op. at 24-25 n.12. These federal courts of appeals instead require district courts to consider whether the sanctions can be applied pursuant to any applicable rule or statute before invoking the court's inherent powers. The majority acknowledges that even the Third Circuit, which at one time endorsed an open-ended reading of *Chambers*, has now "squarely held that before utilizing its inherent powers, a district court should consider whether any Rule- or statute-based sanctions are up to the task." *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 785 (3d Cir. 2001) (reversing a district court's grant of sanctions pursuant to its inherent powers because the district court did not consider whether any civil rule or statute covered the conduct in question).

Moreover, the only authorities cited by the majority for its interpretation of *Chambers* do not in fact eliminate the "up to the task" requirement. The majority first cites this court's decision in *Mann v. University of Cincinnati*, Nos. 95-3195, 95-3292, 1997 WL 280188, at *5-6 (6th Cir. May 27, 1997) (unpublished table decision), as a case where "[t]his Court has affirmed the imposition of sanctions under the district court's inherent authority where the district court did not expressly consider particular rules of civil procedure." Maj. Op. at 21.

Section 5.
*(a) At the earliest practicable moment, not to exceed 30 days, after discovery of loss, the Insured shall give the Underwriter notice thereof.*
*(b) Within 6 months after such discovery, the Insured shall furnish to the Underwriter proof of loss, duly sworn to, with full particulars.*

\*\*\*

(d) Legal proceedings for the recovery of any loss hereunder shall not be brought prior to the expiration of 60 days after the original proof of loss is filed with the Underwriter or after the expiration of 24 months from the discovery of such loss.

JA at 23 (emphasis added).

## B. Biehl's Fraudulent Activities

Jerry Biehl was employed by First Bank as the Executive Vice-President and Chief Executive Officer during the relevant period. During his employment with the bank, Biehl made a series of fraudulent loans to fictitious individuals. During this time, Biehl's lending authority was $100,000, with amounts in excess of this sum requiring the approval of First Bank's Credit Committee. In April 1994, without obtaining approval by the Credit Committee or Patrick Tonti, Chairman of the Board and President of First Bank, Biehl increased the Mascrete line of credit to $301,500 from $140,000.

On May 25, 1994, Biehl's misconduct was reported to First Bank's Board of Directors. At this meeting were Patrick Tonti, Tom Tonti, Herman Carson, Jr., Floyd Millhone, James Giles, Alan Shind, and Jerry Biehl. The Board requested that Alan Shind undertake a special audit of Mascrete, as well as reviewing other bank records to determine if Biehl had made any other unauthorized loans. After defending the Mascrete loans, Biehl offered his resignation. On May 27, 1994, Alan Shind, under Patrick Tonti's supervision, rewrote the

Mascrete line of credit and replaced the April 14, 1994
Agreement approved by Biehl with a new agreement. First
Bank accepted Biehl's resignation by letter dated June 7,
1994.[1]

At a board meeting on June 29, 1994, Shind informed the
Board of suspected fraudulent loans made by Jerry Biehl. The
first loan was to the Ohio Beta Rho Alumni Association, with
a balance of $45,201.75. The second loan was to Keith
Atkins, with a balance of $42,772.69. Biehl converted the
funds from these fraudulent loans to his personal use. At this
meeting, Alan Shind and Patrick Tonti were designated to
notify Hartford of First Bank's loss as a result of Biehl's
activities.

According to Patrick Tonti's July 29, 1996 affidavit, after
Biehl defended his actions at the board meeting, Patrick Tonti
had a private meeting with Biehl, at which time Biehl
admitted he had made the Mascrete loan with the intent of
causing First Bank to sustain a loss:

> On May 25, 1994 . . . I had a private discussion with
> Biehl concerning the Mascrete $301,500.00 line of credit
> and during that discussion Biehl acknowledged to me
> that he knew the loan was over the limits of the lending
> authority. I asked Jerry why he would do such a thing
> and he responded that at the time he made the loan he
> was angry at me and the bank for not receiving his
> bonuses and he wanted to get back at the bank and
> myself.

JA at 250-51. Although the suit was filed in May 1995,
Patrick Tonti's Affidavit was not disclosed nor filed with the
district court until July 31, 1996, in response to Hartford's
motion for summary judgment.

---

[1] Biehl was subsequently charged under federal law for embezzlement
and conversion and entered into a plea agreement.

falls outside Rule 11, i.e., noncompliance with discovery
orders, delays in providing discovery and withholding
material evidence. First Bank's Rule 11 conduct is
intertwined with its other misconduct that needed to be
addressed by the district court's inherent powers. Thus,
even if Hartford had complied with the Rule 11 safe
harbor provisions, Rule 11 would not cover First Bank's
other misconduct and discovery delays, nor would it
apply to First Bank's conduct in intentionally
withholding the Tonti affidavit.

Maj. Op. at 29-30. The problem with the majority's analysis,
in my opinion, is that the district court did not base its finding
of bad faith on First Bank's discovery delays or on the fact
that First Bank did not disclose the Tonti affidavit until
Hartford had filed its motion for summary judgment. In
determining whether conduct is "beyond the reach of the
Rules," *Chambers* makes it clear that we can rely only on
behavior that the district court has found to be "bad-faith
conduct." *Chambers*, 501 U.S. at 50-51.

This case presents circumstances that are considerably
different than those found in *Chambers*, because the
offending conduct that was cited by the district court here was
clearly within the purview of Rule 11's sanctions against
litigants who file meritless claims. The only "bad-faith
conduct" that the district court found was that "First Bank
was aware of the condition precedent in the Bond Agreement,
but chose to ignore it" and, as a result, First Bank "had no
legal or factual basis for bringing suit against Hartford."
Because Rule 11 would have been fully "up to the task" of
sanctioning First Bank's alleged misconduct if Hartford had
complied with the Rule's safe-harbor filing requirements, I
believe that the district court abused its discretion in invoking
its inherent powers to sanction First Bank.

Realizing, perhaps, the flaw in its contention that First
Bank's conduct was "beyond the reach" of Rule 11, the
majority reinterprets *Chambers* so as to eviscerate the

In this case, however, Rule 11 would have fully covered the district court's focus on First Bank's alleged misconduct if Hartford had complied with the Rule's safe-harbor filing requirements. Hartford's failure to comply with those requirements does not mean that the Rule 11 was not "up to the task" of addressing First Bank's behavior. The majority, however, avoids this conclusion by first claiming that Rule 11 would *not* have covered all of First Bank's misconduct, and then by reinterpreting *Chambers* so as to eviscerate the requirement that the district court's inherent powers should be properly invoked only when the civil rules are not "up to the task" of addressing the conduct at issue.

In *Chambers*, the alleged sanctionable conduct was that Chambers had "(1) attempted to deprive this Court of jurisdiction by acts of fraud, nearly all of which were performed outside the confines of this Court, (2) filed false and frivolous pleadings, and (3) attempted, by other tactics of delay, oppression, harassment and massive expense to reduce plaintiff to exhausted compliance." 501 U.S. at 41 (internal quotation marks omitted). The district court granted attorney fees pursuant to its inherent powers after concluding that "the first and third categories could not be reached by Rule 11, which governs only papers filed with a court," and that "the falsity of the pleadings at issue did not become apparent until after the trial on the merits, so that it would have been impossible to assess sanctions at the time the papers were filed." *Id*. at 41. Although the Supreme Court affirmed the district court's decision, it did so only after noting that "[m]uch of the bad-faith conduct by Chambers [] was beyond the reach of the Rules . . . ." *Id*. at 50-51.

At several points in its opinion, the majority attempts to analogize the case before us to the facts in *Chambers*. One such point is found in the following passage:

Here, as in *Chambers*, some of First Bank's conduct would be sanctionable under Rule 11, *i.e.*, filing of a clearly meritless claim, while First Bank's other conduct

At the sanctions hearing held on May 8, 2000, Tom Tonti testified that it was not "until June or July of 1994 that Mr. Patrick Tonti revealed to [me] that Mr. Biehl indicated that he had approved the Mascrete line of credit with the express purpose of harming First Bank" and that the other board members were notified individually by Patrick Tonti of Biehl's comment "sometime in 1994" and most likely at "the end of '94." J.A. at 55. At this hearing, Tom Tonti was asked whether Mr. Giles, First Bank's counsel, knew about Biehl's comments:

Q: So Mr. Giles is the only board member that you didn't talk with to confirm that your father had told them about the private Biehl conversation before the end of 1994; is that correct?

A: To the best of my recollection, you know– again, I can't be exact on the date. But generally, you know, yes, we knew that Jerry Biehl had said that to my father.

*Id*.

## C.   First Bank's Claims against Hartford

On June 30, 1994, Alan Shind contacted Hartford regarding a potential claim. On July 1, 1994, Hartford faxed a Proof of Loss form and letter to Patrick Tonti's home. This letter explained the claims procedure and the form provided, in pertinent part:

In addition to the Proof of Loss, we request that you include the following:

1. *Detailed narrative description of the loss*.
2. Date of discovery of the loss.
3. Explanation of how the loss was recovered.
4. Copy of any accounting analysis prepared.

***

10.     Any other documentation that will help substantiate this claim.

JA at 211 (emphasis added).

First Bank responded by letter dated July 12, 1994 asserting that First Bank had two separate claims for losses incurred as a result of Biehl's actions: (1) a claim for the two fraudulent loans to fictitious individuals; and (2) a claim for the loan to Mascrete in excess of Biehl's lending authority. First Bank provided the information requested regarding the two fraudulent loans, but did not provide any specific information regarding the Mascrete line of credit claim. As to the Mascrete claim, First Bank's letter stated, "We will be sending the penalty claim form as soon as it is completed and reviewed by the bank's attorney."

Attached to First Bank's letter was a sworn Proof of Loss form for embezzlement of a total loss of "$88,000 At this time" signed by Alan Shind on July 20, 1994. With regards to Mascrete claim, the form states: "See attached Exhibit 2 for loans that were made by Jerry Biehl above his lending limit. The amount of loss is unknown at this time." This form further states:

> I further certify that knowledge of this misappropriation first came to me on or about June 28, 1994, that the manner in which this money was misappropriated is as follows: fraudulent loans and loans in excess of lending authority that nothing has been suppressed, withheld, or misrepresented by me material to a knowledge of the facts of said loss and that *the above statement is a complete and truthful recital of the facts*.

JA at 87 (emphasis added).

On July 29, 1994, Hartford responded to First Bank's claim form by letter that reads, in pertinent part:

order to satisfy the first two requirements, the district court had to find that First Bank's claim was invalid and that counsel knew it was invalid. Because the district court apparently thought that it did not have to reach such a conclusion, it appears that the court invoked its inherent power under a misapprehension of the law.

In sum, this case appears to be nothing more than a typical clash between a bank and an insurance company over the application of a fidelity insurance policy. The bank's claim relating to the unauthorized increase in the Mascrete line of credit might have lacked merit, but it hardly seems frivolous. Furthermore, I find no proof that First Bank intended to harass or intimidate Hartford with the claim. Hartford, in fact, is a much larger entity than the bank, so such motives are extremely unlikely. I therefore believe that the district court erred in finding that First Bank acted in bad faith.

## II. The district court erred in invoking its inherent powers

Even if First Bank had acted in bad faith, the Supreme Court has instructed the lower courts that they should invoke their inherent powers only where the rules of civil procedure are not "up to the task" of addressing the conduct at issue:

> [W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the trial court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

*Chambers v. Nasco, Inc.*, 501 U.S. 32, 50 (1991). This is a strong admonition. It means that, absent extraordinary circumstances, a court abuses its discretion when it resorts to its inherent powers to sanction conduct that could be covered by the rules of civil procedure.

And it is a conclusion that I find unpersuasive because it is not supported by any specific findings of fact by the district court. *Big Yank Corp.*, 125 F.3d at 314 ("[T]he bad faith exception requires that the district court make actual findings of fact that demonstrate that the claims were meritless, that counsel knew or should have known that the claims were meritless, *and* that the claims were pursued for an improper purpose.") (emphasis in original).

The majority also attempts to cure this deficiency in the district court's analysis by proclaiming that, "[a]s a matter of law, to file a meritless lawsuit **and** to withhold material evidence in support of a claim is an improper use of the courts." Maj. Op. at 38 n.18 (emphasis in original). I disagree with this pronouncement because it converts a finding that a lawsuit is "meritless" into an "improper use of the courts," whereas the binding precedent of *Big Yank Corp.* requires that these elements be considered as separate concepts. *Big Yank Corp.*, 125 F.3d at 313. Furthermore, the only authority that the majority cites to support its new rule is dicta from the case of *Mansmann v. Tuman*, 970 F. Supp. 389 (E.D. Pa. 1997), concerning the tortious use of the courts under Pennsylvania law. I am unpersuaded by the applicability of the cited authority.

One could also argue that the district court did not even make the first two findings that *Big Yank Corp.* requires in order to properly invoke the bad-faith exception, because the district court did not expressly find that "First Bank filed suit in an attempt to obtain payment on what it knew was an invalid claim under the terms of the Bond Agreement." Instead, the district court simply stated that it "*could* easily conclude" that such was the case. (Emphasis added.) But the district court decided that it "need not reach that conclusion to find that First Bank's suit was in bad faith."

I believe that the district court's analysis is difficult to reconcile with the clear requirements for properly invoking the bad-faith exception as set forth in *Big Yank Corp.* In

Section B. of the Proof of Loss makes claim for loans made in excess of Jerry Biehl's lending limit. *Under the . . . bond issued by Hartford, the mere fact than an officer exceeded his lending authority does not necessarily constitute a covered loss. Please . . . explain how Mr. Biehl's activities fall within the fidelity coverage provided in the bond. Without this additional information, there is no basis to believe that coverage exists for these loans.*

We understand that you are continuing your investigation. Until substantiating documentation is made available, we are not able to provide you with a position on this claim.

Since documentation is lacking at this time, we are unable to advise First Bank of how it should proceed in this matter. To the extent that First Bank can take action that would mitigate its loss, it should do so.

We are requesting copies of supporting documentation in connection with the Bank's claim. . . [.]

JA at 213-14 (emphasis added).

On August 24, 1994, Mr. Dennis Powers, a Hartford bonds claims consultant, went to First Bank to investigate the claims. At the district court hearing, Powers testified that he had a lengthy conversation with Patrick Tonti regarding the phrase "manifest intent," a requirement for indemnification under the policy.[2] At this meeting, Powers requested

---

[2]As previously noted, the bond provides that:
      (A) Loss resulting from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others.
            Such dishonest or fraudulent acts must be committed by the Employee with the *manifest intent:*
                  (a)    *to cause the insured to sustain loss, and*
                  (b)    *to obtain financial benefit for the Employee or another person or entity.*

documentation or other evidence that Biehl made the loan to Mascrete with a manifest intent to cause First Bank to suffer a loss. First Bank provided Powers with the Mascrete file. Powers testified that Patrick Tonti did not mention his private conversation with Biehl on May 25,1994, nor did Tonti reveal Biehl's alleged comment that he made the Mascrete loan to hurt the bank. After reviewing the Mascrete file, Powers reported in an inter-office memorandum that he was not persuaded that "the Bank has established dishonesty or fraudulent activity on behalf of our principal as the cause of the unauthorized loans."

On September 16, 1994, Hartford sent a letter to Patrick Tonti agreeing with the validity of the two fictitious loans claim, but denying the Mascrete line of credit claim.

> We have reviewed this matter and agree that First Bank's claim as to the Ohio Beth Rho and Keith Atkins loans are valid and have been established. For that reason, we enclose for execution and return and Release and Assignment. Upon its return to us, fully executed, we will remit our check in the amount of $63,000 ($88,000 minus $25,000 deductible).
>
> As to the balance of First Bank's claim, it remains Hartford's position that First Bank has not demonstrated that Mr. Biehl acted with a "manifest intent" to cause a loss to First Bank; therefore, his acts do not constitute dishonesty within the meaning of the coverage. I understand that Mr. Powers has previously discussed this issue with you. As to this portion of First Bank's claim, therefore, Hartford reserves all rights and defenses available to it under the bond and applicable law. Hartford will have no objection to First Bank's reserving its rights as to this portion of its claim on the bottom of

JA at 18 (emphasis added).

bring many cases within the bad-faith exception that, as the Supreme Court has stated, is to be invoked only sparingly. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion."). The example of an improper purpose set forth in *Big Yank Corp.* is harassment, and there was no finding by the district court of such motivation or anything close to it on the part of First Bank.

Realizing, perhaps, that "us[ing] the court system to try to force a result that it could not obtain under the applicable law" is insufficient to establish bad faith, the majority speculates about other bases for the district court's decision: "*Implicit* in this finding [of bad faith] is the finding that First Bank had the improper purposes of attempting to use the court system to threaten Hartford in an attempt to force settlement or other action where not otherwise obtainable under the relevant legal principles, and delay." Maj. Op. at 42 n.19 (emphasis added).

But the majority's speculation as to the behavior of First Bank that the district court found objectionable is belied by the *explicit* reasoning of the district court. As described above, the district court based its finding of bad faith on the fact that "First Bank was aware of the condition precedent in the Bond Agreement, but chose to ignore it" and, as a result, First Bank "had no legal or factual basis for bringing suit against Hartford." The district court did not, however, make any findings whatsoever regarding First Bank's *motivation* for filing its complaint.

At another point, the majority claims that "the district court's finding here that the Plaintiff's conduct of this litigation is 'laced with bad faith' is an explicit finding of bad faith." Maj. Op. at 34. The majority offers no authority to support this holding, however, beyond citing the unpublished decisions of *Mann* and *Johnson*. *Id*. Moreover, the district court's statement that First Bank's suit is "laced with bad faith" is not a *finding* at all, but only a bare legal *conclusion*.

In coming to this conclusion, however, the district court relied upon its finding that "First Bank was aware of the condition precedent in the Bond Agreement, but chose to ignore it" and, as a result, "First Bank had no legal or factual basis for bringing suit against Hartford." These statements pertain to the first two findings that a district court must make in order to properly award attorney fees pursuant to the bad-faith exception; namely, that the claim was "meritless" and "that counsel knew or should have known this." *Big Yank Corp.*, 125 F.3d at 313. But the statements say nothing about First Bank's motive for filing its lawsuit.

The majority nevertheless concludes that First Bank's motive was improper. According to the majority, the improper motive that was "implicit" in the district court's analysis was that "First Bank improperly used the court system to try to force a result that it could not obtain under the applicable law." Maj. Op. at 41. In reaching this conclusion, the majority relies upon the district court's conclusory statement that First Bank's bad faith was "in the nature of 'bringing an action or in causing an action to be brought.'" The majority thus infers that a claim is filed for an "improper purpose" if the claim is "invalid" and is put forth by a litigant who knows that the claim is invalid. Given that the first two requirements set forth in *Big Yank Corp.* relate to the merits of the claim and counsel's knowledge regarding the merits, such an interpretation of the phrase "improper purpose" essentially eliminates the third requirement for invoking the bad-faith exception.

Nothing in *Big Yank Corp.* or its progeny, however, indicates that this third requirement is surplusage. A plaintiff's desire to obtain a monetary judgment that is in fact unwarranted cannot possibly be the sort of "improper purpose" that the court in *Big Yank Corp.* had in mind when shaping the requirements for properly invoking the bad-faith exception. Indeed, because the pursuit of unmeritorious claims is unfortunately all too common, this broad interpretation of the "improper purpose" requirement would

the Release and Assignment if you deem it appropriate to do so.

JA at 156.

First Bank did not respond to the September 16, 1994 letter, but began litigation against Mascrete and its general contractor for collection of the loan. First Bank contends it pursued litigation against Mascrete in an effort to comply with Hartford's instructions to mitigate its losses.

### II.   Procedural Background

First Bank filed suit against Hartford on May 8, 1995. In Count I of its complaint, First Bank sought indemnification from Hartford for two sets of fictitious loans by Biehl which he converted for his personal use. In Count II of its complaint, First Bank sought indemnification for the Mascrete loan made by Biehl in excess of his lending authority. On May 28, 1996, Hartford moved for summary judgment on Count II of the complaint. In its supporting memorandum, Hartford contended, in sum, that: (1) First Bank cannot point to any probative evidence in the record that shows or tend to show that the Mascrete losses constituted fraudulent or dishonest acts under the coverage terms of the bond agreement; and (2) First Bank failed to provide Hartford with a Proof of Loss, duly sworn to with full particulars as required by the bond agreement, and consequently, failed to comply with a condition precedent to Hartford's liability. In response to Hartford's motion for summary judgment, First Bank filed the affidavit of Patrick Tonti on July 31, 1996. This affidavit discloses the private conversation between Biehl and Tonti in which Biehl allegedly revealed to Tonti that he made the Mascrete loan with the purpose of harming First Bank.

The district court granted summary judgment to Hartford on Count II and entered final judgment. First Bank appealed the district court decision, but we affirmed the Court's decision, but on different grounds. We found that the district court

improperly considered the affidavit of Patrick Tonti in reaching its conclusion, and held that without this affidavit, there were not any genuine issues of material fact present and an award of summary judgment was appropriate. *First Bank of Marietta v. Hartford Underwriters Ins., Co.*, No 98-4284 (6th Cir. November 3, 1999). This Court also noted that "the district court erred when it considered First Bank's *inconsistent and untimely affidavit* filed in response to Hartford's motion for summary judgment." *Id*. Slip Opinion at *5 (emphasis added). This Court explained that Tonti's affidavit was "inconsistent with First Bank's interrogatory answer that Biehl engaged in the Mascrete transactions in order to increase his standing in the local business community, maintain his employment, and receive credit toward possible bonuses." *Id*. at 8.

When First Bank appealed the district court's decision, Hartford filed for sanctions, alleging that it had a right to seek attorney fees and expenses for "frivolous conduct" under Ohio Revised Code § 2323.51, and, in the alternative, that Hartford was entitled to reasonable attorney fees and expenses under Fed. R. Civ. P. 11. In its supporting memorandum, Hartford described First Bank's alleged "frivolous" or improper conduct as follows:

1)  Filing a civil action based upon the claim asserted in Count One of the Complaint even though Defendant Hartford had offered to voluntarily pay [First Bank] more than the amount of the loss it sustained;

2)  Filing a civil action based upon the claims asserted in Count Two of the Complaint even though Plaintiff had not even arguably "furnished the Underwriter proof of loss, duly sworn to, with full particulars" as required by Section 5 of the Conditions and Limitations of [First Bank's] Financial Institution Bond;

---

## CONCURRING IN PART, DISSENTING IN PART

---

RONALD LEE GILMAN, Circuit Judge, concurring in part and dissenting in part. Although I agree with the majority that Hartford's cross-appeal was properly denied by the district court, I disagree with its conclusion that First Bank's appeal should also be denied. The record, in my opinion, neither supports a finding that First Bank acted in bad faith nor justifies the district court's decision to invoke its inherent powers. I would therefore reverse the district court's award of attorney fees to Hartford.

### I.  First Bank did not act in bad faith

A district court has the "inherent authority to award fees when a party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons." *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (internal quotation marks omitted). The court in *Big Yank Corp.* focused on the plaintiff's alleged filing of a meritless complaint. In this context, the court held that "[i]n order to award attorney fees under this bad faith exception, a district court *must find* that the claims advanced were [1] meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment." *Id*. (internal quotation marks omitted) (emphasis added). Although the district court in the present case arguably made the requisite findings regarding the first two criteria for awarding attorney fees pursuant to the "bad faith exception," it did not make any findings regarding First Bank's motive for filing this lawsuit. The district court thus abused its discretion in invoking its inherent powers to grant attorney fees to Hartford.

As the majority points out, the district court concluded that First Bank's suit against Hartford was "laced with bad faith."

For the reasons stated, we affirm the district court's determination that Ohio Revised Code § 2323.51 is inapplicable in federal court under the circumstances of this case.

**IV.**

For the reasons set forth above, the Court **AFFIRMS** the district court's judgment.

3) Attempting to improperly use the criminal justice systems to obtain false testimony from Third-Party Defendant Jerry Biehl;

4) Abusing the discovery process and improperly concealing relevant evidence;

5) Refusing to produce Mr. Tonti for a deposition and failing to respond to Hartford's discovery requests with regard to Mr. Tonti's files– including Hartford's March 26, 1996 Third Request for the Production of Documents – which remain unanswered more than two years after the requests were served;

6) Compelling Hartford to file a motion for summary judgment, while failing to respond to relevant discovery requests;

7) Filing improper affidavits in response to Hartford's May 28, 1996 Motion for Summary Judgment – which appear to contain false statements of fact -- in an improper attempt to avoid the award of summary judgment.

JA at 285-86.

First Bank filed its response to the motion for sanctions and in a supplemental memorandum, Hartford also requested

sanctions under Fed. R. Civ. P. 37(a)(2)(4),[3] and under the district court's inherent authority. *Id.*

The district court held a hearing on Hartford's motion for sanctions. In an Opinion and Order, the district court first found that sanctions could not be awarded under either Ohio Revised Code § 2323.51 or Federal R. Civ. P. 11. The district court, however, concluded that based upon the record, the court would exercise its inherent power to award sanctions, and ordered a further evidentiary hearing to determine whether First Bank acted in bad faith and whether First Bank filed Claim II without a colorable basis.

After the Court set a hearing, First Bank filed its Rule 11 motion for sanctions, arguing that Hartford's original Rule 11 motion for sanctions was in bad faith because Hartford failed to serve a safe harbor letter before filing that motion.

In its second Opinion and Order, the district court concluded that First Bank's suit against Hartford is "laced with bad faith and that Count II of First Bank's claim was without a colorable basis." The Court granted 98% of the attorneys fees for Hartford's attorney's work through First Bank's appeal to the Sixth Circuit, for an award of $63,187.13. The Court also granted 100% of Hartford's attorney fees for the time expended filing its motions for sanctions, an award of $49,395.76. The district court's total award in attorney fees to Hartford was $112,582.89. The district court also denied First Bank's motion for sanctions,

---

[3]The district court did not address whether discovery sanctions were appropriate under Rule 37 because Rule 37 was not cited in Hartford's original motion. JA at 41. *See* Fed. R. Civ. P. Rule 7(b)(1) ("An application to the court shall be made by motion which . . . shall state with particularity the grounds therefor, and shall set for the relief or order sought."). Under applicable law, despite the fact that the district court did not decide the issue of Rule 37 sanctions, the district court could properly consider First Bank's discovery violations in the context of determining bad faith.

---

of the parties and the attorneys in filing and litigating the claim, rather than for success on the underlying merits of the claim.

Therefore, we agree with the district court's conclusion that the statute is procedural in nature and, as such, under *Erie*, Rule 11 should govern the award of sanctions for frivolous conduct.

Further, the district court found that there is a conflict between Rule 11 and the Ohio Revised Code § 2323.51, in that "Rule 11 does not permit fee shifting but the Ohio statute does . . . and . . . Rule 11 contains a twenty-one day safe harbor provision but the Ohio statute does not." Even if Hartford were correct and Ohio Revised Rule § 2323.51 must be considered substantive in nature, the Court concludes that this state rule conflicts with Fed. R. Civ. P. Rule 11's safe harbor provision and, therefore, should not be applied in federal court. As previously discussed, Rule 11 provides, in pertinent part:

> A motion for sanctions . . . shall be served as provided in Rule 5, but shall not be served or presented to the court unless, within 21 days after service of the motion . . ., the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Fed. R. Civ. P. Rule 11(c)(1)(A). Rule 11's safe harbor provision is intended to provide notice and give parties the opportunity to correct their allegedly violative conduct.

Under the Ohio law, the court can award costs or fees at any time prior to the commencement of the trial or within twenty-one days after the entry of judgment in a civil action. O.R.C. § 2323.51(B)(1). Because the Ohio statute does not have a safe harbor provision similar to Rule 11, the Ohio statute conflicts with the procedural requirements of the federal rule.

need be paid to contrary state provisions.'" *Exxon Corp. v. Burglin*, 42 F.3d 948, 950 (5th Cir. 1995) (quoting 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4508 (1982)).

On the application of the Ohio statute, Hartford contends that the statute creates a substantive right to recover compensatory damages due to "frivolous conduct" in civil actions pending in Ohio. Second, Hartford argues that Section 2323.51 of the Ohio Revised Code does not conflict with Fed. R. Civ. P. Rule 11.

Section 2323.51 of the Ohio Revised Code provides that the court may award reasonable attorney fees to any party to that action adversely affected by frivolous conduct. *See* O.R.C. § 2323.51(B)(1). The statute further defines frivolous conduct as litigation that: (1) obviously serves merely to harass or maliciously injure another party; or (2) is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law. *Id.* § 2323.51(A)(2)(a) and (b).

The district court concluded that Ohio Revised Statute § 2323.51 is procedural in nature. Consequently, the district court concluded that a motion for sanctions is governed by Fed. R. Civ. P. Rule 11, and not by Ohio Revised Statute § 2323.51. In so holding, the district court cited two district court decisions that concluded that Section 2323.51 of the Ohio Revised Statute was procedural in nature: *Ghane v. Parivash Manouchehri*, C2-95-737 (S.D. Ohio July 16, 1999)(Holschuh, J.), and *Combs v. Foster*, C-3-95-477 (S.D. Ohio Mar. 15, 1999)(Rice). The district court stated in its opinion: "There is no clear criterion for deciding whether a particular state rule is 'substantive' for purposes of deciding whether *Erie* requires that it be enforced in federal diversity litigation. (J.A. at 45, n. 3)(quoting *S.A. Healy Co. v. Milwaukee Metro. Sewage Dist.*, 60 F.3d 305, 310 (7th Cir. 1995)). The Ohio Revised Code is a general statute that allows for the award of attorneys fees based upon the conduct

having decided that Hartford's motion for sanctions should be granted.

### III.  Standard of Review

The standard for review of the district court's order granting sanctions and fees is an abuse of discretion. *Apostolic Pentecostal Church v. Colbert*, 169 F.3d 409, 417 (6th Cir. 1999). "An abuse of discretion exists if the district court based its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id*. (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)); *see* also *Runfola & Assocs. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996) (stating that the district court's order imposing Rule 11 sanctions, as well as sanctions under the court's inherent powers, is reviewed for an abuse of discretion).

**A.  Whether the district court abused its discretion in granting attorney fees and sanctions under its inherent powers.**

First Bank contends that the district court erred in several ways, including the use of its inherent powers, the application of the inherent powers, and in the amount of fees it awarded to Hartford. In particular, First Bank contends that the district court abused its discretion by using its inherent powers to sanction First Bank for its alleged failure to comply with a condition precedent to suit because Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and Fed. R. App. P. 38 could have been used to resolve the claim. First Bank also contends that because Rule 11 could have dealt with "the questions of sanctions for filing a complaint without having complied with a condition precedent," the district court abused its discretion by awarding Hartford attorney fees based on its inherent

powers.[4]   First Bank makes the same argument as to the district court's award of attorney fees incurred in the Sixth Circuit appeal, that First Bank contends could have been dealt with under Fed. R. App. P. 38.   First Bank also cites *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991), for its contention that "the district court can only 'safely rely' on inherent power after the district court has found that the Federal Rules of Civil Procedure are 'not up to the task' of addressing the issue."  We address each of these arguments *seriatim*.

As to the availability of Rule 11 of the Federal Rules of Civil Procedure, that rule affords the district court the discretion to award sanctions when a party submits to the court pleadings, motions or papers that are presented for an improper purpose, are not warranted by existing law or a nonfrivolous extension of the law, or if the allegations and factual contentions do not have evidentiary support.  *See* Fed. R. Civ. P. 11(b)(1) through (3).   Here, the district court concluded that Fed. R. Civ. P. 11 sanctions were unavailable due to Hartford's failure to comply with Rule 11's safe harbor filing requirements, and therefore considered sanctions under the court's inherent powers.  This Court has expressly ruled that Rule 11 is unavailable where the moving party fails to serve a timely "safe harbor" letter. *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997) (holding that "sanctions under Rule 11 are unavailable, unless the motion for sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed with or presented to the court").  Thus, the district court correctly

---

**4** As previously discussed, Hartford alleged seven separate acts by First Bank that could serve as a basis for an award of attorney fees and expenses, *see supra* pp. 10-11, only one of which included sanctions for filing Claim II without complying with the condition precedent of filing a proof of loss with full particulars.

---

holding, the district court relied upon this Court's reported case of *Ridder* and the plain language of Fed. R. Civ. P. Rule 11.  This case is distinguishable from *Barker*, in that here, there is not a single letter that clearly reflects that Hartford will seek sanctions and this letter does not satisfy the spirit of the 1993 Amendments to Rule 11 by providing notice to First Bank.

For these reasons, the Court affirms the district court's holding that Hartford could not recover sanctions under Rule 11 of the Federal Rules of Civil Procedure.

**3.    Whether the district court erred in holding that Hartford was not entitled to attorney fees under Ohio Revised Code § 2323.51.**

Hartford contends that the district court erred in holding that Hartford was not entitled to attorney fees under Ohio Revised Code § 2323.51.  The district court's conclusions of law are subject to *de novo* review.  *Lincoln Elec. Co. v. St. Paul Fire and Marine Ins. Co.*, 210 F.3d 672, 683 (6th Cir. 2000) (quotations omitted).  "The district court's application of state law is reviewed *de novo*." *Id.* (citing *Leavitt v. Jane L.*, 518 U.S. 137, 145 (1996); *International Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (6th Cir.1996)).

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity must apply state substantive law, and federal procedural law.  The Supreme Court has also observed that "'(i)n an ordinary diversity case where the state law does not run counter to a valid federal statute, . . . state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.'" *Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 260, n. 31, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (quoting 6 J. Moore, FEDERAL PRACTICE AND PROCEDURE § 54.77(2), pp.1712--1713 (2d ed. 1974) (footnotes omitted)).  Yet, "[a]s one treatise remarked, 'If the [federal] Rule speaks to the point in dispute and is valid, it is controlling, and no

After you have reviewed our Motion for Summary Judgment, I think that First Bank should give serious consideration to voluntarily dismissing its action against Hartford and voluntarily reimbursing Hartford for the substantial fees and expenses incurred in this action. I will not repeat the arguments presented in the Memorandum in Support of the Motion or Appendix A; however, I think it is clear beyond any possible dispute that First Bank does not have any probative evidence to support the allegations of Count Two . . . No proper purpose is served by the continuation of this litigation by First Bank.

JA at 302.

In *VanDanacker v. Main Motor Sales Co.*, 109 F.Supp. 2d 1045, 1054 (D. Minn. 2000), the district court rejected a Rule 11 sanctions motion as procedurally deficient in a case where defendants sent only warning letters to plaintiffs' counsel. As here, the defendants in *VanDanacker* cited *Barker* as support for their contention that their warning letters "satisfied the spirit of the 1993 Amendments by providing notice and giving plaintiffs the opportunity to correct their allegedly violative conduct." *Id.* The district court rejected the argument, noting:

> To the extent that the *Barker* court held that the warning letters will satisfy the requirement of service of the motion to the offending party prior to the entry of judgment as well as the safe harbor, it is inconsistent with the holding in the same circuit in *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir.1997) . . . .

*Id.* (citations omitted).

Here, the district court concluded that Hartford could not recover sanctions under Rule 11 because "both parties have acknowledged that Hartford did not meet the procedural prerequisites of Rule 11's safe harbor provision, in that Hartford did not file a motion for sanctions." JA at 47. In so

ruled that Rule 11 was unavailable to address these issues raised by Hartford.[5]

Even if there were available sanctions under statutes or various rules[6] in the Federal Rules of Civil Procedure, the Supreme Court in *Chambers* emphasized that the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation. In *Chambers*, the Supreme Court affirmed a district court's award of $996,644.65 in attorney's fees and litigation expenses for the defendant's series of meritless motions and pleadings and delaying actions. 501 U.S. at 38. In affirming the district court's resort to its inherent authority for that award, despite the availability of 28 U.S.C. § 1927 and Rule 11, the Court stated:

> We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above. These other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions. First, whereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses. *At the very least*, the inherent power must continue to exist to fill in the interstices.

501 U.S. at 46 (emphasis added). The Supreme Court further noted that:

---

[5] Hartford contends that its service of the motion for summary judgment on First Bank was the functional equivalent of a safe harbor letter. As discussed below, because Hartford's letter does not remotely suggest pursuit of Rule 11 sanctions, this argument lacks merit.

[6] For a listing of relevant sanction rules, *see Chambers*, 501 U.S. at 42, n.8 and 501 U.S. at 62. (Kennedy, J. dissenting).

There is, therefore, nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct. This is plainly the case where the conduct at issue is not covered by one of the other sanctioning provisions. *But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules.* A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees. Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, *the court ordinarily should rely on the Rules rather than the inherent power*. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

501 U.S. at 50 (emphasis added and citations omitted).

We likewise have stated that "[i]n addition to Rule 11 and 28 U.S.C. § 1927, a district court may award sanctions pursuant to its inherent powers when bad faith occurs." *Runfola & Assocs.*, 88 F.3d at 375. The district court has the "inherent authority to award fees when a party litigates 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). "In order to award attorney fees under this bad faith exception, a district court must find that 'the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment.'" *Big Yank Corp*, 125 F.3d at 313 (quoting *Smith*

court. 1999 WL 519186, at *3. In *Powell*, the district court stated that Defendant complied with the "safe harbor" provisions of Rule 11 by

[S]erving plaintiff, through her counsel Mazer, with a copy of his proposed motion for sanctions on July 2, 1997. He also gave Mazer advance notice of his intention to move for sanctions in the May 9, 1997 letter. Plaintiff had . . . a period of almost four months, to consider the motion for sanctions . . . .

\*\*\*

The prompt filing of Alexander's Rule 11 motion . . . fourteen days after the dismissal of plaintiff's complaint, did not operate to deprive plaintiff and Mazer of the benefits of the "safe harbor" provision.

*Powell v. Squire, Sanders & Dempsey*, 990 F.Supp. 541, 544-45 (S.D. Ohio, 1998), *vacated in part on other grounds*, *Powell*, 182 F.3d 918, 1999 WL 519186, at *5.

Conversely, in *Barker*, this Court affirmed the award of sanctions under Rule 11 despite the fact that defendants did not comply with the safe harbor provision, where defendants wrote to Plaintiff clearly indicating that they would seek sanctions three to four months before the motion to dismiss was granted. *Barker*, 156 F.3d 1228, 1998 WL 466437 at *2. There, "defendants also served Turner with their motion for sanctions 21 days before filing it with the court." *Id*.

Hartford does not contest the fact that it did not serve its Rule 11 motion on First Bank to comply with the twenty-one day "safe harbor" provision. Rather, Hartford contends that the district court erred in holding that it could not recover sanctions under Rule 11 because its May 24, 1996 letter to First Bank and its May 28, 1996 Motion for Summary Judgment "sufficiently complied with the safe harbor provision of Rule 11," citing the unreported decision of *Barker*. Hartford's May 24, 1996 letter provides, in pertinent part:

**2.    *Whether the district court abused its discretion in holding that Hartford was not entitled to attorney fees under Rule 11.***

Rule 11 of the Federal Rules of Civil Procedure contains a safe harbor provision:

> A motion for sanctions . . . shall be served as provided in Rule 5, but shall not be served or presented to the court unless, within 21 days after service of the motion . . ., the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Fed. R. Civ. P. Rule 11(c)(1)(A).

In *Ridder*, 109 F.3d at 296, the defendant failed to comply with Rule 11 when it did not serve the sanctions motion on the plaintiff's counsel for the twenty-one "safe harbor" period. The Sixth Circuit held:

> [A]dhering to the rule's explicit language and overall structure, we hold that sanctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day "safe harbor" period before it is filed with or presented to the court; this service and filing must occur prior to final judgment or judicial rejection of the offending contention. *Quite clearly then, a party cannot wait until after summary judgment to move for sanctions under Rule 11.*

*Id*. at 297 (emphasis added).    The issue of effective compliance is to be resolved "on a case-by-case basis." *Id.* at 295.

In *Powell*, this Court stated that the determination in *Ridder* that the motion was required to be filed with the court prior to adjudication of the case was unnecessary to the holding of the case, and, therefore, was dicta that was not binding on the

*v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1375 (6th Cir. 1987)).

While it is not entirely clear when the rules are not "up to the task," *Chambers* broadly held that a court's reliance upon its inherent authority to sanction derives from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings.  501 U.S. at 43.  In *Chambers,* the Court explained the boundaries of a federal court's exercise of its inherent power[7] in the following terms:

> [A] court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order[]."  The imposition of sanctions in this instance  transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicat[ing]

---

[7]In *Chambers*, the Court listed a number of judicial acts as within a court's inherent authority: ". . .a federal court has the power [1] to control admission to its bar and to discipline attorneys who appear before it . . .; [2] to punish for contempts . . . '[for] disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of the trial'. . .; [3] to vacate its own judgment upon proof that a fraud has been perpetrated upon the court . . .; [4] to conduct an independent investigation in order to determine whether it has been a victim of fraud . . .; [5] [to] bar from the courtroom a criminal defendant who disrupts the trial . . .; [6] [to] dismiss an action on grounds on forum non conveniens . . .; [7] [to] act *sua sponte* to dismiss a suit for failure to prosecute . . .; [8] to fashion an appropriate sanction for conduct which abuses the judicial process . . . [including] dismissal of a lawsuit . . . [or] assessment of attorney's fees."  *Chambers* 501 U.S. 43 at 45, (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987) (other citations omitted)).

judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy."

*Chambers*, 501 U.S. at 45-46 (citations omitted).

Although *Chambers* states that a district court should consider whether the conduct could be sanctioned under the rules before it relies upon its inherent authority to impose sanctions for bad-faith conduct, *Chambers* does not explicitly require in every instance that a district court first determine whether the conduct could be sanctioned under the rules or relevant statutes before considering sanctions under its inherent authority. As the Court also stated: "the Court's prior cases have indicated that the inherent power of the district court can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49. This is especially true as here and in *Chambers*, where some of the particular conduct at issue was sanctionable under Rule 11 and through other Rules, while other conduct was "intertwined within conduct that only the inherent power could address." *Id.* at 50.

We do not interpret *Chambers* to require the district court, in every instance, to exhaust consideration of sanctions under other relevant rules and/or statutes. This reading of *Chambers* is reasonable given its express language that "*neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules . . . the court ordinarily should rely on the Rules rather than the inherent power*." 501 U.S. at 50. The Supreme Court's use of the word "ordinarily" suggests that there may be some exceptional circumstances when a district court's express consideration of other rules and statutes is not required. Our ruling is wholly consistent with the Supreme Court's language in *Chambers*.

**1.  Whether the district court abused its discretion in denying First Bank's motion for Rule 11 sanctions.**

First Bank contends that the district court erred in not awarding its motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure, stating:

In this case Appellee could have complied with the safe harbor provision of Civil Rule 11 and its failure to do so was itself a Rule 11 violation and the District Court abused its discretion in not awarding Appellant Rule 11 sanctions. Had Appellee complied with the safe harbor condition precedent none of the litigation would have been necessary or at least the Appellant would have been on notice of the potential Rule 11 sanction.

Appellant First Bank's Final Brief at 42.

Rule 11 provides that the court *may* impose an appropriate sanctions if pleadings or claims are presented for an improper purpose, are not warranted by existing law or a nonfrivolous extension of the law, or if the allegations and factual contentions do not have evidentiary support. *Ridder*, 109 F.3d at 293 (stating that the imposition of sanctions for violations of Rule 11 is discretionary rather than mandatory). In *Powell v. Squire, Sanders & Dempsey*, 182 F.3d 918, 1999 WL 519186 (6th Cir. 1999), this Court held that the district court did not abuse its discretion in declining to award sanctions under Rule 11. In so holding, the Court stated: "Rule 11 provides that sanctions *may* be imposed, and only to the extent required to deter similar conduct in future." *Id.* at *5.

Here, the district court denied First Bank's motion for sanctions, having decided that Hartford's motion for sanctions should be granted. We affirm the district court's denial of First Bank's motion for Rule 11 sanctions because the district court did not base its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence.

support a finding of improper purpose, we conclude that the district court did not abuse its discretion in finding bad faith on the part of First Bank.

## C.   Amount of the attorney fees

First Bank next contends that the district court abused its discretion in the amount of fees it awarded Hartford under its inherent powers.

Here, the district court held a hearing to determine whether sanctions were appropriate, and if so, the amount of the sanctions. During the sanctions hearing, Hartford presented expert testimony that addressed the reasonableness of the fees charged by Hartford's counsel. The expert witness testified that the hourly fee charged of $140.00 was low, and that the work done and fees charged were "both reasonable and necessary for this type of case." Further, the expert witness estimated that 98% of Hartford's counsel's time was spent defending Count II, because Hartford had already agreed to pay First Bank for the Count I claim before First Bank filed the action. First Bank did not rebut the testimony.

The district court accepted the unrefuted expert testimony regarding the reasonableness of the fees and the percentage of time spent on Claim II, and granted 98% of the attorneys fees for Hartford's attorney's work through First Bank's appeal to the Sixth Circuit, for an award of $63,187.13. The Court also granted 100% of Hartford's attorney fees for the time expended filing its motions for sanctions, an award of $49,395.76. The district court's total award in attorney fees to Hartford was $112,582.89.

Because the district court did not base the amount of fees on an erroneous view of the law or a clearly erroneous assessment of the evidence, this Court affirms the district court's award of attorney fees.

This Court has affirmed the imposition of sanctions under the district court's inherent authority where the district court did not expressly consider particular rules of civil procedure. *Mann v. Univ. Of Cinn.*, 114 F.3d 1188, 1997 WL 280188, at *5-6 (6th Cir. May 27, 1997). Under *Chambers*, other Circuits have held that the mere fact that conduct is held not to be a violation of any rule or statute authorizing sanctions does not preclude a district court from imposing sanctions under its inherent power. *See Amsted Industries, Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 377-79 (Fed. Cir. 1994)[8] (recognizing a federal court's inherent power to impose sanctions); *Gillette Foods Inc. v. Bayernwald-Fruchteverwertung,* 977 F.2d 809, 813-14 (3d Cir. 1992)[9] (rejecting the rule that sanctions cannot be imposed by the district court under its inherent power simply because a claim is held not to violate Rule 11 or another rule or statute authorizing sanctions). The Seventh Circuit observed that "courts need not consider lesser sanctions, however, in

---

[8]The dissent contends that *Amsted* does not support the majority's position. Under the facts there, the Court did not find that an award of expert witness fees was appropriate under the Court's inherent authority. Yet, the Court noted that sanctionable conduct subject to a district court's exercise of its inherent authority exists where a party "committed . . . discovery abuse . . . presented misleading evidence . . . and engaged in conduct amounting to the abuse of the judicial process." *Id.* at 379 citing the facts in *Mathis v. Spears*, 857 F.2d 749 (Fed. Cir. 1988). Here, First Bank committed each of these acts, thus justifying sanctions under the district court's inherent authority.

[9]The dissent also criticizes our citation to *Gillette*. Our citation to *Gillette* is not for the factual circumstances in *Gillette*, but for the broader proposition that an applicable rule does not bar a district court's express or its inherent authority. As the Third Circuit stated: "We do not think our decision is inconsistent with the Supreme Court's statement in *Chambers*, 'if in the informed discretion of the court, . . . the rules are [not] up to the task, the court may safely rely on its inherent power. We believe this statement referred to the ability of a court to impose sanctions under its inherent power when some of the attorney's conduct could be sanctionable under Rule 11 and other rules." *Gillette 977* F.2d at 814, n.10.

situations where the misconduct is 'so egregious, inexcusable, and destructive that no lesser *sanction than dismissal could be adequate.'" Graham v. Schomaker*, 215 F.3d 1329, 2000 WL 717093, at \*3 (7th Cir. 2000).  At one time, the Third Circuit noted that the district court is not require to "exhaust all other sanctioning mechanisms prior to resorting to its inherent power."  *Landon v. Hunt*, 938 F.2d 450, 454 (3rd Cir. 1991).

To be sure, the Third Circuit now citing *Chambers* has reversed a district court for failure to consider the applicable federal rules of civil procedure and statutes before resorting to its inherent power can be reversible error.[10]  *Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 785 (3d Cir. 2001) (noting that "we squarely held that before utilizing its inherent power, *a district court should consider whether any Rule - or statute - based sanctions are up to the task*" in holding that the district court erred when it "did not consider whether any such sanctions . . . would have sufficed to deal with any misconduct that occurred in this case.") (emphasis added) (citing *Klein*,185 F.3d at 110) ("When the Rules or pertinent statutes are 'up to the task,' *they should be used*.  When they are not, a trial court may turn to its inherent power, but should exercise that power with caution.") (emphasis added and footnotes omitted).

---

[10]The dissent argues that the Third Circuit and other appellate courts "require district court to consider whether the sanctions can be applied pursuant to any applicable rule or statute before invoking the court's inherent powers."  *See* Dissent Op. at 9.  While the Third Circuit in *Montrose* reversed for a district court's failure to consider applicable rules, the Third Circuit's holding was only that "a district court *should consider* whether any Rule – or statute-based sanctions are up to the task."  243 F.3d at 785 (citation omitted).  The difference between *Montrose* and our ruling is one of degree.  Our ruling grants flexibility to the district courts with the right to reverse for failure to consider a clearly applicable rule without any justification and is consistent with *Chambers* that "*the court ordinarily should rely on the Rules rather than the inherent power*." 501 U.S. at 50.

meritless claim.[19]  As to bad faith in the nature of filing suit, First Bank's improper purpose was to file a lawsuit as a mechanism to force Hartford to settle Claim II, rather than trying to prevail on the merits of that claim.  Further, implicit in the district court's findings of bad faith, was the finding that First Bank had the improper purposes of delay in filing and prosecuting its claim, and of harassment, by failing to disclose the Tonti affidavit until responding to Hartford's motion for summary judgment and by engaging in multiple discovery violations.  Consequently, we agree with the district court that First Bank acted in bad faith and such bad faith clearly evinced First Bank's improper purpose in pursuit of this litigation.

Because the district court did not base its finding on an erroneous view of the law or a clearly erroneous assessment of the evidence, and because there is ample evidence to

---

[19]The dissent contends that our analysis essentially eliminates the third requirement of the bad-faith exception.  Here, the district court found that First Bank's filing and prosecution was in the nature of bad faith.  Implicit in this finding is the finding that First Bank had the improper purposes of attempting to use the court system to threaten Hartford in an attempt to force settlement or other action where not otherwise obtainable under the relevant legal principles, and delay.   The district court separately said that it could identify the improper purpose of attempting to collect on a meritless claim, but the district court did not reach this argument because it had already found that First Bank had an improper purpose in filing the suit.  We therefore respectively disagree with the dissent's characterization that we improperly "infer[] that a claim is filed for an 'improper purpose' if the claim is 'invalid' and it is put forth by a litigant who knows that the claim is invalid."  *See* dissent at p. 2.  Our inference is in accord with this Court's ruling in *Zack* that "[i]f, from the facts found, other facts may be inferred which will support the judgment, such inferences shall be deem to have been drawn by the District Court." 291 F.3d at 412 (quoting *Grover Hill Grain Co.*, 728 F.2d at 793). Contrary to the dissent's argument, this case is far from a "typical clash between a bank and an insurance company over the application of a fidelity insurance policy."  *See* dissent at 5.  Here, First Bank hid the ball by failing to disclose vital evidence and engaged in multiple discovery violations and violations of court orders.  If this is typical litigation conduct in such cases, we should do all we can to discourage it.

*it knew was an invalid claim under the terms of the Bond Agreement.*" (Emphasis added).   But having already concluded that First Bank's bad faith – or improper purpose – was in the nature of bringing the action, the district court stated that it "need not reach [the issue of First Bank's attempt to actually prevail on the merits of Claim II] to find that First Bank's suit was in bad faith."

In addition to evidence of First Bank's bad faith in filing this action, the record reflects the district court's findings that First Bank failed to comply with several discovery orders issued by Magistrate Judge Abel, including: (1) the August 18, 1995 Pretrial Preliminary Order, (2) the October 25, 1995 Order that First Bank respond to all outstanding discovery no later than November 3, 1995; and (3) the October 25, 1995 Order that all discovery had to be completed by March 29, 1996. *See supra* n. 3.

The district court's findings on the withholding of the Tonti affidavit, despite discovery orders and Hartford's discovery requests, are consistent with the Court's affirmance of a finding of bad faith in *Mitan* where the plaintiff withheld required documents on the issue of the district court's jurisdiction thereby extending the proceeding. 23 Fed. Appx. at 294-95, 298-99. Of course, the filing of a clearly meritless claim in Count II that resulted in extensive discovery and an appeal, is evidence of a bad faith and abuse of the courts and is similar to the type of misconduct condemned in *Chambers*.

In sum, the evidence reflects that Claim II was clearly meritless, counsel knew or should have known it, and that First Bank acted in bad faith. The district court expressly concluded that First Bank acted in bad faith in bringing the action. Implicit in this finding is that First Bank improperly used the court system to try to force a result that it could not obtain under the applicable law, which is separate and district from the issue of whether First Bank was attempting to prevail on the merits of its lawsuit and collect payment on a

In our view, *Chambers* should be read broadly to permit the district court to resort to its inherent authority to sanction bad-faith conduct, even if the court has not expressly considered whether such conduct could be sanctioned under all potentially applicable rules or statutes. While a district court should ordinarily consider whether "the conduct could also be sanctioned under the statute or the Rules," *Chambers*, 501 U.S. at 50, there is nothing in *Chambers* that explicitly requires a court to determine whether "the conduct at issue is covered by one of the other sanctioning mechanisms." *Id.* We are reluctant to impose a wooden requirement where the district court needs the discretion and flexibility to exercise its inherent authority to address various impermissible litigation

practices as identified in this Circuit [11] and other

_____

[11]*See Mitan v. Int'l. Fidelity Ins. Co.*, 23 Fed. Appx. 292, 294-95, 298-99 (6th Cir. 2001) (upholding district court's sanctions against "[plaintiff] for his history of forum shopping and abusing the legal process, including for failing to response to three show cause orders to produce evidence to support the district court's exercise of diversity jurisdiction"); *Jaynes v. Austin*, 20 Fed. Appx. 421, 427 (6th Cir. 2001) ("[d]efendant[s] attempt[] to include new terms in the General Releases that were not included in the Settlement Agreement and not agreed to or bargained for."); *American Trust v. Sabino*, 230 F.3d 1357, 2000 WL 1478372, at *2 (6th Cir. 2000) (sanctioning *pro se* plaintiff for making frivolous jurisdictional challenges, and diatribes against the Internal Revenue Services, as well as filing additional papers in violation of the district court's order); *In re Tenn-Fla Partners*, 226 F.3d 746, 748-751 (6th Cir. 2000) (awarding attorney's fees for debtor's fraudulent conduct for providing "misleading and incomplete disclosures," in securing confirmation of its Chapter 11 reorganization plan); *Calvin Assocs. v. Gentry*, 181 F.3d 102, 1999 WL 238666, at *2 (6th Cir. 1999) (sanctioning defendants and a related party's corporate officer for filing an action in violation of the district court's order barring those parties from making threats of legal action against the plaintiff); *Barker v. Bank One Lexington*, 156 F.3d 1228, 1998 WL 466437, at *2, 3 (6th Cir. 1998) (stating in dicta that the court's inherent powers could have been used to sanction a plaintiff for filing a complaint barred by a prior decision even though the plaintiff did not sign the complaint); *Mann v. Univ. of Cincinnati*, 114 F.3d 1188, 1997 WL 280188, at *5, n.7 (6th Cir. 1997) (affirming sanctions against defendants "for imposing undue burdens or expenses on the [University's] Student Health Services" and for "the issuance of the *ex parte* communication in suggesting early compliance" before the opposing party had an opportunity to object under Rule 45); *In Re Downs*, 103 F.3d 472, 478-79 (6th Cir. 1996) (affirming a bankruptcy judge's sanctions and denying all fees to a bankruptcy attorney who failed to disclose his compensation arrangement with the debtor as required by 11 U.S.C. § 329); *Telechron, Inc. v. Intergraph*, 91 F.3d 144, 1996 WL 370136 (6th Cir. 1996) (upholding sanctions against plaintiff for "litigation conduct . . . marked by a long history of noncompliance with discovery requests and court orders, stormy attorney-client relationships and significant delay"); *Frandorson Prop. v. Miton*, 76 F.3d 378, 1996 WL 50616 (6th Cir. 1996) (sanctioning litigant's improper removal of state court action); *Johnson v. Cleveland Heights/University Heights School Dist. Bd. of Ed.*, 66 F.3d 326, 1995 WL 527365, at *2, 3 (6th Cir. 1995) (affirming district court's sanction under its inherent authority as well as Fed. R. Civ. P. 37 and 28 U.S.C. § 1925 against plaintiff's attorney "for repeated discovery violations"); *Johnson v. Johnson*, 60 F.3d

by the bank to be covered under the bond. The District Court abused its discretion in finding bad faith.

Appellant First Bank's Final First Brief at 38-39.

Contrary to First Bank's contentions, the district court need not make a finding of harassment in order to conclude that the suit was filed for an improper purpose and in bad faith. As discussed, this Court's precedents establish that "a district court must find that 'the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose ***such as harassment***.'" *Big Yank Corp*, 125 F.3d at 313 (quoting *Smith*, 829 F.2d at 1375) (emphasis added). This Court has quoted favorably the Second Circuit decision in *Colombrito v. Kelly*, 764 F.2d 122 (2d Cir. 1985), summarizing its holding as follows:

> [I]n order to award attorney's fees under the bad faith exception, a district court must find that the plaintiff's suit was both "entirely without color . . asserted wantonly, for purposes of harassment or delay, *or for other improper reasons* . . . Neither meritlessness alone . . . nor improper motives alone . . . will suffice."

*Big Yank*, 125 F.3d at 313-314 (quoting *Colombrito*, 764 F.2d at 133)(emphasis added). In a word, harassment is, but one type of improper purpose.

Here, as discussed, the district court explicitly found that First Bank's suit against Hartford is "in the nature of bad faith in bringing an action or causing an action to be brought.'" Implicit in this finding of bad faith, and the detailed discussion of the chronology supporting it, is that First Bank had the improper purpose of using the legal system to threaten and harass Hartford in an attempt to force settlement of Claim II -- a claim on which it knew it could not prevail on the merits in litigation. This inference arises from the district court's additional statement that it "*could easily conclude that First Bank filed suit in an attempt to obtain payment on what*

possession, First Bank had no legal or factual basis for bringing suit against Hartford.

\*\*\*

With the information concerning Mr. Biehl's motivation in the hands of First Bank, the Bank would have known that litigating this matter was not necessary -- at least not until after they presented this information to Hartford. Looking at these facts alone, First Bank's actions bespeak bad faith.

JA at 64, 65.  The district court further noted that "Hartford provided First Bank with every opportunity to support its claim -- including a letter outlining what should be contained in the proof of loss, and a visit by Mr. Powers who specifically asked for supporting documentation to show that Mr. Biehl's loans were dishonest . . . ."  JA at 66.

Thus, rather than providing information to Hartford which could have enabled it to assess the coverage of Claim II under the policy, First Bank chose to hide the ball and file this action when informed that Hartford believed that the claim was not covered under the bond because of the lack of evidence of manifest intent.

First Bank contends that its failure to disclose Biehl's comment is not evidence of bad faith:

> Not telling the insurance company about a conversation with a thief that made no difference to the insurance company is not bad faith.  Bad faith is defined as situations where the claims were brought for improper purposes such as harassment or delay . . . The District Court made no finding that the claim was brought for an improper purpose such as harassment or delay.

> The filing of a lawsuit after there has been a denial of coverage is not bad faith because it was not filed for purposes of harassment or delay.  The suit was filed to seek recovery under an insurance bond that was believed

Circuits.[12]

---

828, 1995 WL 385142, at \*2 (6th Cir. 1995) (warning of future sanctions against appellant who had filed his "third attempt before this court to vacate the 1974 state court judgment"); *Mercer v. Fayette Circuit Court*, 52 F.3d 325, 1995 WL 222181 (6th Cir. 1995) (approving sanctions for future filings by plaintiff who had "filed nine lawsuits in the district court all of which were dismissed as frivolous"); *Wrenn v. Vanderbilt University Hospital*, 50 F.3d 11, 1995 WL 111480, at \*3 (6th Cir. 1995) (enjoining further appeals by *pro se* litigant stating "this court has the authority to enjoin harassing litigation under its inherent authority and the All Writs Act").

[12] Applying the abuse of discretion standard, the Fifth Circuit upheld the district court's award of sanctions under its inherent power in *Carroll v. The Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290 (5th Cir. 1997). In *Carroll*, the Fifth Circuit concluded that the district court did not err in resorting to its inherent power to sanction an attorney for his behavior at a deposition, finding that "the usual rules were not 'up to the task.'"  110 F.3d at 293.  The Ninth Circuit in *Mark Indus.*, 50 F.3d at 732, also found that the district court did not abuse its discretion by sanctioning an attorney under its inherent power for entering into a stipulated order of dismissal without the consent of the client.  In that case, the Ninth Circuit concluded that Rule 11 did not authorize sanctions in favor of a party against its own lawyer.  Notwithstanding, *Mark Indus.* held that the trial court has the inherent power, apart from the rules or statutes, to sanction attorneys for their willful abuse of judicial process or bad faith conduct. *Id*.  The Third Circuit also found no abuse of discretion in *Fellheimer, Eichen & Braverman, P.C., v. Charter Technologies, Inc.*, 57 F.3d 1215, 1227-28 (3d Cir. 1995), upholding the imposition of sanctions as the proper exercise of the bankruptcy court's discretion under its inherent power for the bad-faith conduct of the debtor's attorneys.

On the other hand, circuit courts have reversed district courts for abusing their discretion by imposing sanctions under their inherent power. In *Gillette Foods*, the Third Circuit considered whether the district court had the inherent authority to impose sanctions under its inherent power against counsel for Gillette Foods  Incorporated for including a tortious interference claim in the second amended complaint.  The district court imposed sanctions after recognizing that counsel's conduct was beyond the reach of Rule 11 because he did not personally sign the complaint. In that case, the Third Circuit held that "Gillette Foods's reasonable claim for tortious interference could not have been brought in bad faith," finding "it hard to conceive that the tortious interference claim survives Rule 11

The Supreme Court stated that "[a] primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers* 501 U.S. at 44-45. As the Supreme Court noted, to impose this requirement in every instance may have the effect of causing a delay in the proceeding that improperly rewards the offending party. "Interpreting the proceedings on the merits to conduct sanctions hearings may serve only to reward a party seeking delay." *Id.* at 56. *Chambers*, 501 U.S. at 56. Moreover, as the Seventh Circuit observed, district courts need the discretion "to craft sanctions because the power to sanction is essential for them to manage heavy case loads and to protect the interests of litigants." *Graham*, 2000 WL 717093, at *3 (citing *Oliver v. Gramley*, 200 F.3d 465, 466 (7th Cir. 1999)).

As a practical matter, the district court should usually inform the parties, as did the district judge here, that the district court is considering using its inherent authority to

---

scrutiny, yet can be sanctioned as a claim brought in bad faith." *Id.* at 814-15. The Third Circuit also found in *Saldana v. Kmart Corp.*, 260 F.3d 228, 238 (3d Cir. 2001) that an attorney's use of profanity and her post-verdict letter describing an expert witness as a "Nazi" did not justify the imposition of sanctions under the district court's inherent authority. In *Saldana*, the Third Circuit found that the district court improperly imposed sanctions because the conduct was not "egregious" and because another basis for sanctions existed in the form of a local rule. 260 F.3d at 238. The Seventh Circuit in *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F.3d 1041, 1958-59 (7th Cir. 1998) similarly vacated the district court's award of sanctions under its inherent powers, which was imposed against an attorney for filing a frivolous motion. In *Corley*, the Seventh Circuit found that "to the extent the district court intended to impose the sanction under Rule 11, it clearly abused its discretion, for neither defendants nor the court complied with the rule's procedural requirements." *Id.* at 1058. The Seventh Circuit in *Corley* also found that the court could not rely upon its inherent power because the attorney was not given an opportunity to respond to the defendants' motion for sanctions. *Id.* at 1059.

to satisfy the improper purpose requirement[18], and is supported by the evidence in the record.

In holding that First Bank acted in bad faith, the district court found that First Bank had knowledge of Biehl's comment that he intentionally increased the Mascrete line of credit when it filed its original proof of loss with Hartford in July of 1994. Despite this knowledge, First Bank did not provide information about Biehl's comment to Hartford in the Proof of Loss form or in any other supporting documentation. In fact, despite the bond agreement's requirement of a "proof of loss, duly sworn to, with full particulars" and Hartford's continual requests for information, First Bank did not reveal Biehl's alleged comment suggesting a manifest intent to harm the bank until July 31, 1996, when First Bank filed the Affidavit of Patrick Tonti in opposition to Hartford's motion for summary judgment. The district court found:

> First Bank had in its possession the requisite proof to show that its second claim fell within the coverage of the Bond Agreement. With this information in its

---

[18] The dissent argues that the district court did not make any findings that First Bank acted with an improper purpose. After its seven pages of factual findings, the district court expressly found that "there is an abundance of evidence which demonstrates that First Bank acted in bad faith not only in filing the claim, but in prosecuting it." In our review of a district court's factual findings, "the appellate court must view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Paschal v. Flagstar Bank, FSB*, 2002 WL 1558785 (6th Cir. 2002) (quoting *United States v. Schrock*, 855 F.2d 327, 333 (6th Cir. 1988)). This rule of appellate review permits us to make reasonable inferences from the facts found by the district court. *Zack* 291 F.3d at 412. As a matter of law, to file a meritless lawsuit **and** to withhold material evidence in support of a claim is an improper use of the courts. *See Mansmann v. Tuman*, 970 F.Supp. 389, 396 (E.D.Pa. 1997) ("If Plaintiff had alleged the Tumans had intentionally . . . withheld information from them to file a lawsuit the Tumans knew was not warranted, Plaintiff would have stated a claim against them for wrongful use of civil proceedings.").

The evidence in the record clearly supports the district court's finding that First Bank's counsel knew or should have known that Claim II of its complaint was without merit, and we affirm the district court's conclusion on this issue.

### 3.  *Improper Purpose Requirement*

As to the third element required to award sanctions under its inherent powers, the district court concluded, based on an extensive review of the evidence in the record, that First Bank's suit against Hartford was "laced with bad faith." J.A. at 66.  The district court explicitly found that "First Bank's suit against Hartford is in the nature of bad faith of 'bringing an action or causing an action to be brought.'" J.A. at 64.  The district court provided a detailed chronology of the facts under its heading "First Bank Acted in Bad Faith." J.A. at 63.  Although the district court did not explicitly label its findings in the bad faith section of its order as a finding of "improper purpose," the record and Sixth Circuit precedent reflect that this is what the district court intended.  *See supra* note 13.  For the reasons that follow, we conclude that the district court's finding that First Bank acted in bad faith is sufficient

sanction particular conduct.  The parties can present to the district court those rules or statutes that may be more appropriate.  The district court can then exercise its "informed discretion" in selecting the appropriate authority.   "The different grounds for ordering sanctions and shifting attorney's fees are distinct and require a close and careful analysis."  *In re Ruben*, 825 F.2d 977, 983 (6th Cir. 1987).  Of course, there may be some instances in which the litigation conduct is so egregious and the court's inherent authority so clearly applicable that a district court can exercise its inherent authority without the necessity of a full exposition on the potentially applicable federal rules and statutes.

To be sure, the Court in *Chambers* cautioned that "inherent powers must be exercised with restraint and discretion." *Id.* at 44.  Under *Chambers,* the appellate court reviews a district court's resort to its inherent authority for an abuse of discretion and a district court's failure to use a clearly applicable and effective sanction rule could constitute an abuse of discretion. *Chambers*, 501 U.S. at 50.  As noted by the Third Circuit in *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995), "[g]enerally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists." (citing *Gillette Foods v. Bayernwald-Fruchteverwertung*, 977 F.2d 809, 813 (3rd Cir. 1992).

The exercise of inherent authority is particularly appropriate for impermissible conduct that adversely impacts the entire litigation.   In response to the contention in *Chambers* that the conduct at issue could have been addressed by Rule 11 and "other Rules", the Supreme Court responded:

> Much of the bad-faith conduct by Chambers, however, was beyond the reach of the Rules; *his entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court, and the conduct sanctionable under the Rules was intertwined within conduct that only the inherent power could*

*address*. In circumstances such as these in which all of a litigant's conduct is deemed sanctionable, *requiring a court first to apply Rules and statutes containing sanctioning provisions to discrete occurrences before invoking inherent power to address remaining instances of sanctionable conduct would serve only to foster extensive and needless satellite litigation, which is contrary to the aim of the Rules themselves.*

*Id.* at 50-51, citing Advisory Committee's Notes on 1983 Amendment to Rule 11, 28 U.S.C. App., pp. 575-576.

Further, as noted in *Chambers*, there are significant differences between Rule 11 sanctions[13] and inherent power sanctions. Rule 11 applies primarily to pleading and papers. *Byrne v. Nexhat*, 261 F.3d 1075, 1106 (11th Cir. 2001). Another principal difference is that the imposition of Rule 11 sanctions requires a showing of "objectively unreasonable conduct," *United States v. Koury Perez*, 187 F.3d 1, 8 (1st Cir. 1999). In contrast, the imposition of inherent power sanctions requires a finding of bad faith. "A court may impose sanctions pursuant to its inherent powers only when it finds the action in question was taken in bad faith," *Lockary v. Kayfetz*, 974 F.2d 1166, 1174 (9th Cir. 1992) (citing *Chambers*, 501 U.S. at 50), or conduct that is "tantamount to bad faith." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980). Moreover, a Rule 11 monetary sanction is limited to "only those expenses directly caused by the [offending] filer." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 406-07 (1990). Where, as here, the offending party's conduct extends through the proceedings, Rule 11

---

[13] There are also differences between Rule 37 sanctions and inherent authority sanctions. Rule 37 does not require a showing of bad faith. *United States v. Calros*, 17 F.3d 1041, 1047 n. 4 (7th Cir. 1994). Similarly, Rule 37's authorization of monetary sanctions is also limited to expenses "caused by the failure to comply with discovery orders." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980). Rule 37 likewise may not address the scope of the wrongful conduct.

that the filing of a suit with what the insurance carrier believes to be a deficient proof of loss bars a suit." Finally, First Bank reiterates that the district court erred based on a waiver argument.

In our view, First Bank's arguments that it or its counsel should not have been expected to know that First Bank failed to satisfy the condition precedent are unpersuasive. Given Ohio's longstanding rule requiring compliance with all conditions precedent in an insurance contract, a Rule 11 letter was unnecessary to convey the lack of merit for First Bank's second claim on the Mascrete loan. Even if Hartford did not file a Rule 11 safe harbor letter and the district court did not specify that the proof of loss was deficient, First Bank should have known that by not providing a proof of loss with particulars about the Mascrete loan, First Bank failed to comply with the condition precedent as required by Ohio law. Here, First Bank never specified an amount of claimed loss from the Mascrete loan on the proof of loss form, and never supplemented the form with further documentation as promised, or as repeatedly requested by Hartford.

First Bank was well aware of the condition precedent, as it appears in Section 5 of the fidelity bond agreement, and is reiterated in Hartford's July 1, 1994 letter to First Bank. Hartford indicated in a second letter dated September 16, 1994, that First Bank has not demonstrated that Biehl acted with a "manifest intent" to cause a loss to First Bank. First Bank did not respond to the September 16th letter and never supplemented its proof of loss or provided additional documentation regarding Claim II. Instead, as the district court found, First Bank "waited approximately fourteen months after filing suit to submit an affidavit which purported to support the claim." JA at 63. Consequently, the district court concluded that "[a]t the time it filed suit, First Bank was well aware of this condition precedent and, therefore, aware of the fact that its suit was filed without a legal or factual basis and therefore was without a colorable basis." *Id.*

Here, the district court did not abuse its discretion in finding that there was no colorable basis for Claim II. To the contrary, the evidence in the record strongly supports the district court's finding.   Additionally, with the possible exception of the Patrick Tonti Affidavit[17] filed with the district court on July 31, 1996, First Bank did not provide any proof to establish that Biehl made the loan with a "manifest intent" to cause the insured harm, a requirement for recovery under the bond.

For these reasons, this Court affirms the district court's finding that there was no colorable basis for Claim II of First Bank's complaint.

### 2.   *Counsel Knew or Should Have Known the Claim was Meritless Requirement*

First Bank next argues that the district court erred in finding that First Bank should have known that there was a failure of condition precedent on the proof of loss issue for several reasons.  First, Plaintiff contends it was not made aware of its failure of condition precedent because Hartford never sent it a "Rule 11 safe harbor letter stating that the claim should be dismissed because there was no legal or factual grounds to support the claim."   Second,  because the prior decisions of the court were based upon the lack of evidence of manifest intent, "a reasonable attorney would not have known that the proof of loss was insufficient because neither the District Court or the Sixth Circuit found summary judgment to be appropriate for the reason that the proof of loss was deficient."  Third, "Appellee has never cited a case that holds

---

[17]As discussed earlier, we affirmed the district court's grant of summary judgment to Hartford on Count II, but held that "the district court erred when it considered First Bank's inconsistent and untimely affidavit filed in response to Hartford's motion for summary judgment." This Court affirmed the district court's grant of summary judgment on Claim II after determining that there are no genuine issues of fact in dispute.

remedies would not address the injury that the district court sought to remedy that included withholding evidence, the consequences of the withholding, violating discovery orders and extending the proceedings.

*Chambers* leaves to the district court's "informed discretion" whether the applicable statutes or rules are "up to the task"  given the circumstances of the particular conduct. S*ee Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 109-11 (3rd Cir. 1999) (interpreting *Chambers* to mean "that the Rules are not 'up to the task' when they would not provide a district court with the authority to sanction all of the conduct deserving of sanction"); *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir.1995) (noting that the inherent power to sanction generally should be invoked only if statutes or rules are not "up to the task"); *Gillette Foods*, 977 F.2d at 814 n.10 (construing the above-quoted paragraph from *Chambers* to refer to "the ability of a court to impose sanctions under its inherent power when some of the attorney's conduct could be sanctionable under Rule 11 and other rules").   In the absence of a plainly applicable rule, we likewise trust in the district court's "informed discretion" when the circumstances require the exercise of its inherent authority.

In the section of its Opinion entitled "First Bank Acted in Bad Faith", JA at 63, the district court made the detailed findings of fact, including that: (1) First Bank was aware of the condition precedent in the bond agreement, but chose to ignore it; (2) First Bank had no legal or factual basis for bringing suit against Hartford; (3) "First Bank had information in its possession *for more than two years* that would have made the second claim, arguably, a loss covered by the Bond Agreement", JA at 65; (4) With the information that First Bank had concerning Mr. Biehl's information, "the Bank would have known that litigating this matter was not necessary – at least until *after* they presented this information to Hartford", JA at 65; and (5) Tonti did not mention his conversation with Biehl, despite Tonti's two-hour

conversation with Powers and Powers' request for supporting documentation.

In addition, in the district court's order dated March 28, 2000, the district court detailed First Bank's various discovery violations. In the Order setting the evidentiary hearing, the district court also found that First Bank especially failed to comply with the Magistrate Judge's discovery orders of August 18, 1995 and October 25, 1995 order, which required that First Bank to provide all discovery by November 3, 1995, and that all discovery be completed by March 29, 1995. "Finally, on April 27, 1998, twenty-seven days after the discovery deadline had passed and three days before the case-dispositive motion deadline, First Bank produced a number of documents but further indicated that the Bank was still searching for additional documents and would produce them at a later time." JA at 43.

Here, as in *Chambers*, some of First Bank's conduct would be sanctionable under Rule 11, *i.e.,* filing of a clearly meritless claim, while First Bank's other conduct falls outside Rule 11, i.e., noncompliance with discovery orders, delays in providing discovery and withholding material evidence. First Bank's Rule 11 conduct is intertwined with its other misconduct that needed to be addressed by the district court's inherent powers. Thus, even if Hartford had complied with the Rule 11 safe harbor provisions, Rule 11 would not cover First Bank's other misconduct and discovery delays, nor would it apply to First Bank's conduct in intentionally withholding the Tonti affidavit.[14]

---

[14]The dissent faults our conclusion that this conduct is "beyond the reach of the Rules," arguing that "the district court did not base its finding of bad faith on First Bank's discovery delays or the fact that First Bank did not disclose the Tonti affidavit . . . ." *See* dissent, at p. 7. We disagree. Here, the district court found that the litigation was "laced with bad faith" and provided a detailed chronology of the facts leading to its conclusion. In its section "First Bank Acted in Bad Faith", the district court expressly found as a fact that First Bank had knowledge of Biehl's

explicit finding of bad faith. We also conclude that the district court's other findings on Plaintiff's litigation conduct to be "tantamount" to bad faith providing more than ample grounds to justify the exercise of its inherent authority and to impose the sanction of attorney fees and costs.

### 1. *Claims advanced were meritless requirement*

Here, the district court expressly concluded that First Bank's Claim II was meritless. First Bank contends that Claim II was not filed without a colorable basis because First Bank's "reasonable belief was that the Mascrete loan was recklessly made was reasonable and, therefore the inference of a manifest intent to cause a loss was reasonable so that there would be coverage under the insuring agreement." Appellant's First Third Brief at p. 13.

The district court provided several reasons for its conclusion that First Bank's claim was without a colorable basis. First, under well settled Ohio law, an employer's failure to comply with the condition precedent prevents recovery. *Id.* (citing *Kornhauser v. National Sur. Co.*, 150 N.E. 921 (Ohio, 1926); *Krassny v. Metropolitan Life Ins. Co.*, 54 N.E.2d 952, 956 (Ohio 1944)). Here, the bond agreement provided a clear condition precedent to filing suit.

The district court also rejected First Bank's waiver argument as meritless for several reasons: (1) First Bank never supplied Hartford with a proof of loss with full particulars for the second claim under the terms of the Bond Agreement; (2) assuming First Bank's analysis of the case law is correct, all that is waived is the Bond Agreement's time frame, and the district court did not award sanctions based upon the time frame; and (3) in its September 16, 1994 letter, Hartford expressly indicated that it "reserved all rights and defenses available to it under the bond and applicable law" with regard to Claim II. The Court agrees with the district court that this waiver argument is meritless.

*Republic of the Phillipines v. Westinghouse Electric Corp.*, 43 F.3d 65, 74 n. 11 (3d Cir. 1994) (emphasis in original). *See also In re Prudential Ins., Co. American Sales Practice*, 278 F.3d 175, 181 n.4 (3rd Cir. 2002). **(**Although bad faith is "usually required under the court's inherent authority . . . such sanctions do not always require a showing of bad faith"). The Eighth Circuit also authorizes the use of inherent powers sanction, without a showing of bad faith, for ethical rule violations by attorneys. *Harlan v. Lewis*, 982 F.2d 1255, 1260 (8th Cir. 1993) (citing *Anderson v. Dunn*, 19 U.S. (6 Wheat) 529 (1821) (discussing the inherent power to "impose silence, respect, and decorum.").

After a thorough review of the record, the district court based its award of attorney fees on First Bank's bad faith.

> Under its inherent power, this Court finds that both bases upon which sanctions are appropriate are met in this case. First, there is evidence indicating that there was no "colorable basis" for Count II, the Mascrete line of credit claim. Second, there is an abundance of evidence which demonstrates that First Bank acted in bad faith, not only in filing the claim, but in prosecuting it.

JA at 60. As discussed below, the general finding is amply supported by the record.

Adopting the rationale of *Mann* and *Johnson*, we conclude that the district court's finding here that the Plaintiff's conduct of this litigation is "laced with bad faith"[16] is an

---

[16] The dissent characterizes this statement by the district court as "not a *finding* at all, but only a bare legal *conclusion*." *See* Dissent Op. at 4 (emphasis in original). We respectfully disagree. We have ruled in a similar context on the bad faith filing of a bankruptcy petition that "the finding of bad faith is a fact based determination that is reviewed for clear error." *In re Trident Assoc. Ltd. P'Ship*, 52 F.3d 127, 132 (6th Cir. 1995). Bad faith presents an issue of intent that is a factual issue. *Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1983)("Treating issues of intent as factual matters for the trier of fact is commonplace.").

Because the district court did not base its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence, the district court did not abuse its discretion in the invocation of its inherent powers in this case.

**B.  The District Court's Application of its Inherent Powers**

We initially note that the district court exercised caution in exercising its inherent powers by giving notice of its consideration, conducting a separate hearing and considering post-hearing briefs in determining whether First Bank acted in bad faith and filed its claim without a colorable basis. This is in accord with our precedents. *Ray A. Scharer & Co. v. Plabell Rubber Products, Inc.*, 858 F.2d 317, 320 (6th Cir. 1988). First Bank, however, contends that the district court abused its discretion in the application of its inherent powers in finding that Claim II was filed without a colorable basis and in finding that First Bank acted in bad faith in filing and prosecuting its claim.

Here, the district court acknowledged that before an award attorneys fees under its inherent powers, the court must "[m]ake actual findings of fact that demonstrate that the claims advanced were meritless, that counsel knew or should have known that the claims were meritless, *and* that the claims were filed for an improper purpose," citing *Big Yank*

---

alleged statements more than two years before First Bank filed the Tonti affidavit, despite Hartford's numerous requests for the information. J.A. at 65. This conduct, although properly sanctionable, falls beyond the reach of Rule 11. As discussed *supra*, in the Order finding the necessity for a sanctions hearing, the district court cited First Bank's numerous discovery violations. J.A. at 42-43. We have held that "the failure to even make an express finding of a particular fact does not require reversal if a complete understanding of the issues may be had without the aid of separate findings." *Grover Hill Grain Co. v. Baughman-Oster, Inc.*, 728 F.2d 784, 793 (6th Cir. 1984) (citing *Huard-Steinheiser, Inc. v. Henry*, 280 F.2d 79 (6th Cir.1960)). *Accord Zack v. Commissioner of Internal Revenue*, 291 F.3d 407, 412 (6th Cir. 2002).

*Corp.*, 125 F.3d at 314 (emphasis in original and other citations omitted). J.A. at 60. The district court also cited a Second Circuit case as being in harmony with this Sixth Circuit precedent because both circuits "recognize[] the inherent power of the district court to sanction based upon a finding of bad faith and the lack of a colorable basis for the suit," citing *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999).[15] In *Schlaifer Nance*, the Second Circuit held that "[i]n order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in *bad faith, i.e., motivated by improper purposes such as harassment or delay*." *Id.* at 336 (citations omitted and emphasis added).

In this Circuit, "bad faith" is a requirement for the use of the district court's inherent authority, *Runfola*, 88 F.3d at 375 (citation omitted), but this Circuit has also upheld the use of such sanctions for conduct that "was tantamount to bad faith." *Mann*, 1997 WL 280188 *5 (quoting *Roadway Express*, 447 U.S. at 767), and "even in the absence of a specific finding of bad faith." *Plabell Rubeen Products*, 858 F.2d at 320, citing with reservations *Grinnell Bros., Inc. v. Touche Ross & Co.*, 655 F.2d 725 (6th Cir. 1981).

---

[15]Because in its findings the district court relied upon Sixth Circuit precedent and the Second Circuit decision in *Schlaifer Nance*, which, as discussed, holds that bad faith means improper purpose, it is clear that the district court intended its findings on bad faith to serve as findings on improper purpose. This conclusion is further strengthened by the fact that the district court expressly combined the first two requirements of awarding sanctions, that the claim was meritless and counsel knew or should have known that it was meritless, into a single section of its opinion, separate from its discussion of the third requirement of bad faith/improper purpose. This Court has likewise used "improper purpose" and "bad faith" interchangeably. *Compare Runfola & Assocs.*, 88 F.3d at 375 with *Big Yank*, 125 F.3d at 313 (quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1375 (6th Cir. 1987)).

In two opinions, this Court has upheld a district court's sanctions in exercise of its inherent authority despite objections that the orders imposing the sanctions lacked specific findings of bad faith. In *Mann*, the defendants argued that "neither the magistrate judge nor the district judge made a finding of bad faith and the record does not support such a finding." 1997 WL 280188, at *5. This Court noted the magistrate judge's finding "that the defendants 'violated both the letter and the spirit of the discovery rules in general and Rule 45 in particular'" as well as the district court's reference to the need to sanction the defendants for "such harmful and improper conduct - - conduct for which the defendants have shown not the slightest remorse." *Id.* at *6. This Court then concluded: "[t]hese findings are more than 'tantamount' to a finding of bad faith on the part of the defendants; they are explicit findings of bad faith." *Id.* In *Jaynes*, we observed that "the district court did not use the phrase 'willfully abuse the judicial process', but the district court "did conclude that defendant attempted to 'obstruct' and 'delay' resolution of the action." 20 Fed. Appx. At 427. This Court then ruled that: "we find that to be a sufficient discretionary finding of bad faith to justify an award of attorney fees." *Id.*

Moreover, other Circuits have found that a specific finding of bad faith is not always required. As the Third Circuit observed,

As Justice Scalia pointed out in his dissent, however, the fact that *fee-shifting* as a sanction requires a finding of bad faith "in no way means that *all* sanctions imposed under the courts' inherent authority required a finding of bad faith." *Id.* at 59, 111 S. Ct. at 2140. Thus a court need not always find bad faith before sanctioning under its inherent powers: "[s]ince necessity does not depend upon a litigant's state of mind, the inherent sanctioning power must extend to situations involving less than bad faith." *Id.*; *see generally Estate of Leon Spear v. Commissioner of IRS*, 41 F.3d 103, 111-12 (3d Cir. 1994) (discussing role of bad faith in sanctioning).