RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0087p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

VINCENT D. WHITE, JR.,

                *Petitioner-Appellant,*

    *v.*

MICHAEL PHILLIPS, Warden,

                *Respondent-Appellee.*

No. 21-3546

───────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:17-cv-00325—James L. Graham, District Judge.

Decided and Filed:  April 27, 2023

Before:  SUTTON, Chief Judge; LARSEN and DAVIS, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:**  C. Mark Pickrell, Nashville, Tennessee, for Appellant.  William H. Lamb, OFFICE OF THE OHIO ATTORNEY GENERAL, Cincinnati, Ohio, for Appellee.

───────────────

## OPINION

───────────────

LARSEN, Circuit Judge.  Vincent White, Jr., a state prisoner, sought federal habeas relief under 28 U.S.C. § 2254.  The district court denied his petition but granted a certificate of appealability on a single issue:  whether White had shown that his attorney was laboring under a conflict of interest that required automatic reversal of White's conviction.  White's claim depends on facts outside the state court record, so the Supreme Court's recent decision in *Shinn v. Ramirez,* 142 S. Ct. 1718 (2022), likely precludes relief.  But even if we could consider the new facts introduced in federal habeas court, White's claim fails.  White's attorney informed

White of the facts underlying the purported conflict of interest, and White did not object. So White was required to show that the alleged conflict adversely affected counsel's performance. White has not made such a showing, so we AFFIRM.

I.

A 2012 shooting at a house in Columbus, Ohio left two men dead, and two others injured. *State v. White*, No. 14AP-160, 2015 WL 9393518, at *1 (Ohio Ct. App. Dec. 22, 2015). The surviving victims identified Vincent White, Jr. as one of two shooters. *Id.* An Ohio jury convicted White of four counts of aggravated murder, two counts of attempted murder, two counts of felonious assault, one count of aggravated burglary, three counts of aggravated robbery, and one count of having a weapon while under disability. *Id.* White was sentenced to life in prison without parole. *Id.*

On direct appeal, White argued that he had received constitutionally ineffective assistance of counsel because his trial attorney had a conflict of interest. *Id.* at *2. White asserted that, at the time of his trial, his defense attorney, Javier Armengau, was under indictment in Franklin County, Ohio, for a number of serious criminal offenses. *Id.* White argued that this created a conflict of interest because Armengau "would have been conflicted over whether to devote time to preparing his own defense or that of his client"; "might have chosen to take a greater percentage of White's financial resources in fees to help finance his own defense"; "would have been reluctant to vigorously represent White for fear of angering the same prosecutor's office that was prosecuting him"; and "might have failed to engage in any plea-bargaining efforts in White's case out of an indignant or vengeful desire to gain a victory over the prosecutor's office." *Id.*

The Ohio Court of Appeals declined to consider White's ineffective-assistance claim on direct appeal, explaining that the record lacked the necessary facts to allow the court to assess the merits. *Id.* at *3. The court said that the direct appeal was "not the vehicle to make such an argument," suggesting that White should raise his claim in a motion for postconviction relief. *Id.* The Ohio Supreme Court declined further review. *State v. White*, 49 N.E.3d 321 (Table) (Ohio 2016).

Proceeding *pro se*, White filed a timely federal habeas petition, and an untimely petition for state postconviction relief. The state court dismissed his late-filed petition. *State v. White*, No. 12CR-4418, slip op. (Franklin Cnty. Ct. of Common Pleas, Nov. 30, 2017); *State v. White*, No. 18AP-158, slip op. (Franklin Cnty. Ct. of Common Pleas, Apr. 4, 2018). The federal district court denied White's petition but granted a certificate of appealability on his ineffective assistance claim. *White v. Warden, Ross Corr. Inst.*, No. 2:17-CV-325, 2018 WL 1250032, at *2 (S.D. Ohio Mar. 12, 2018), *vacated and remanded*, 940 F.3d 270 (6th Cir. 2019).

On appeal, this court held that White had procedurally defaulted his ineffective assistance claim by failing to timely raise it in state postconviction proceedings. *White v. Warden, Ross Corr. Inst.*, 940 F.3d 270, 272–73 (6th Cir. 2019). Yet the *Martinez-Trevino* doctrine excused the default because White lacked counsel during postconviction proceedings, which, under Ohio law, was his first chance to have his substantial claim assessed on the merits. *Id.* at 278; *see also Martinez v. Ryan*, 566 U.S. 1, 14–15, 17–18 (2012); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013). The panel remanded the case for the district court to review "White's claim *de novo*, including whether he is entitled to an evidentiary hearing in order to supplement the record." *White*, 940 F.3d at 279.

On remand, the district court granted the State's unopposed motion to expand the record and motion for an evidentiary hearing. *White v. Warden, Ross. Corr. Inst*, 540 F. Supp. 3d 757, 760 (S.D. Ohio 2021). But in lieu of an evidentiary hearing, the parties agreed to a set of stipulated facts. *Id.* One important new fact—which contradicted representations White made in his habeas petition—was that Armengau had told White about Armengau's indictment in the same jurisdiction; yet White had decided to retain Armengau as his counsel anyway. *Id.* at 761–62. Citing our court's precedent, the district court determined that, because White did not object to proceeding with Armengau as his counsel, he was required to "prove both an actual conflict and an adverse effect o[n] Armengau's performance." *Id.* at 762 (citing *Moss v. United States*, 323 F.3d 445, 455 (6th Cir. 2003)).

White failed both prongs. The district court found no actual conflict of interest, largely because White and Armengau's cases were handled by different judges and were prosecuted by different authorities. *Id.* And White had not pointed to any evidence showing that the purported

conflict had affected Armengau's performance. *Id.* at 763. The district court thus denied relief but granted a certificate of appealability on the sole issue now before this court: whether White has shown a conflict of interest sufficient to require automatic reversal without proof that the conflict impaired trial counsel's performance. *Id.* at 765. We review this question de novo. *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005).

II.

White's ineffective assistance claim depends on facts not found in the state court record. That's why the Ohio Court of Appeals rejected his claim on direct appeal. *White*, 2015 WL 9393518, at *3. And it's also why this court—having found cause to excuse White's procedural default—remanded the case for the district court to determine whether White should be permitted to supplement the record. *See White,* 940 F. 3d at 279. The parties then agreed to a set of stipulated supplemental facts that formed the basis of the district court's judgment below.

But after appellate briefing in this case was complete, the Supreme Court decided *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022), which is relevant to this appeal. Surprisingly, although both parties are represented by experienced counsel, neither party saw fit to raise the question of whether and how *Shinn* applies in this case. *See* Fed. R. App. P. 28(j) (allowing parties to file supplemental authorities with the court). Of course, we must follow *Shinn* in any event.

*Shinn* left in place the Court-created *Martinez-Trevino* doctrine, which this court previously held excused White's default of his ineffective assistance claim. *See Shinn*, 142 S. Ct. at 1737; *White*, 940 F.3d at 278. But *Shinn* also recognized that Congress, through the Antiterrorism and Effective Death Penalty Act (AEDPA), has restricted federal habeas courts' ability to adjudicate claims using evidence outside the state court record. *Shinn*, 142 S. Ct. at 1736–37. When a prisoner is at fault for failing to develop the state court record, AEDPA says that he may not supplement the record in federal court unless he can show that his claim relies "on (1) a 'new' and 'previously unavailable' 'rule of constitutional law' made retroactively applicable by [the Supreme] Court, or (2) 'a factual predicate that could not have been previously discovered through the exercise of due diligence.'" *Id.* at 1734 (quoting 28 U.S.C. §§ 2254(e)(2)(A)(i), (ii)). Even then, a prisoner "must show that further factfinding would demonstrate, 'by clear and convincing evidence,' that 'no reasonable factfinder' would have

convicted him of the crime charged." *Id.* (quoting § 2254(e)(2)(B)). White has not attempted to satisfy AEDPA's rigorous standards. Thus, *Shinn* likely forecloses our consideration of the parties' stipulated facts. And White's claim fails if we cannot consider any facts outside the state court record.

But even if we *could* consider the parties' stipulated facts, White's claim for relief does not improve; you might think it gets worse. When we consider the stipulated facts, it becomes apparent that White misled this court, and the district court, about his knowledge of the pending charges against Armengau. Indeed, the district court found that he lied. *White*, 540 F. Supp. 3d at 761–62. In his amended habeas petition, White represented that he did not know that his counsel was under indictment at the time of White's trial. That fact was important to this court in deciding to excuse White's procedural default. *See White*, 940 F.3d at 272–73 (emphasizing that Armengau's pending charges were "unbeknownst to" White, who "did not learn about Armengau's indictment until he began assembling his case for direct appeal"). But the joint stipulation White agreed to on remand reveals that Armengau promptly disclosed his indictment to White, well before White's trial, and that White decided to retain Armengau as counsel anyway. Although we proceed to consider White's claim, we caution that deceiving the court is an ill-advised strategy to convince a court to grant what is inherently equitable relief. *See Brown v. Davenport*, 142 S. Ct. 1510, 1523–24 (2022); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (recognizing a federal court's discretion to dismiss a case pursuant to its "inherent power" to "fashion an appropriate sanction for conduct which abuses the judicial process" and to "set aside fraudulently begotten judgments"); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512–14 (6th Cir. 2002) ("*Chambers* should be read broadly to permit the district court to resort to its inherent authority to sanction bad-faith conduct.").

Accepting the stipulated facts as true, circuit precedent squarely forecloses White's claim. In *Smith v. Cook*, we confronted a nearly identical ineffective assistance claim involving the same defense attorney. 956 F.3d 377 (6th Cir. 2020). There, as here, the habeas petitioner argued that "Armengau had a conflict of interest based on his own criminal charges, which were pending while he prepared Smith's defense." *Id.* at 392. We denied relief. We held that Smith could not show an actual conflict of interest because different prosecutors and different judges

handled the matters. *Id.* Like White, Smith was prosecuted by the Franklin County Prosecutor's office. But a special prosecutor from the Ohio Attorney General's office handled Armengau's case precisely "to avoid the appearance of either favoritism or bias" stemming from Armegau's "pending cases as opposing counsel with assistant prosecutors from [the County Prosecutor's] office." *Id.* at 382–83 (quoting Notice of Appointment of Special Prosecutor, *State v. Armengau*, No. 13CR-04-2217 (Ohio Ct. C.P. Franklin Cnty. May 6, 2013)). We also noted that the cases proceeded before different judges; to avoid the appearance of bias, "all the Franklin County judges presiding over the active matters Armengau was handling as counsel recused themselves from Armengau's case." *Id.* The stipulated facts leave no daylight between Smith's asserted conflict and White's asserted conflict, so *Smith* forecloses White's claim.

And even if there *were* an actual conflict, it would not result in automatic reversal as White suggests. Rather, because White was aware of the charges against his attorney but did not object, he must show harm—that is, he must show that the conflict caused Armengau to make "specific decisions that prejudiced" White. *Id.* at 392. White has not even attempted to make this showing.

White argues that the Supreme Court's decisions in *United States v. Cronic*, 466 U.S. 648 (1984), *Holloway v. Arkansas*, 435 U.S. 475 (1978), *Glasser v. United States*, 315 U.S. 60 (1942), and *Mickens v. Taylor*, 535 U.S. 162 (2002), compel automatic reversal here. But none of these cases requires us to break from our precedent. *Smith*, in fact, relied on *Mickens* for the proposition that, absent objection, a defendant must show that the conflict "*actually* affected the adequacy of his representation." *Smith*, 956 F.3d at 392 (quoting *Mickens*, 535 U.S. at 168). And *Mickens* drew on *Holloway*, clarifying that *Holloway* "create[d] an automatic reversal rule *only* where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict." 535 U.S. at 168 (emphasis added). *Glasser* doesn't help White either, since that case also involved concurrent representation of codefendants with conflicting interests over counsel's timely objection; whereas here, there was no objection to put the court on notice of the alleged conflict. *See* 315 U.S. at 68. Finally, *Cronic* involved no alleged conflict of interest at all. In sum, White cites no authority casting doubt on our precedent. Where the defendant or his counsel fails to object to a conflict, only "a

showing of (1) an actual conflict; and (2) an adverse effect on his counsel's performance will void the conviction." *Moss*, 323 F.3d at 455 (citing *Mickens*, 535 U.S. at 173–74); *see also Smith*, 956 F.3d at 392. White has not made this showing.

* * *

We AFFIRM.